**MINNESOTA ASSOCIATION OF HOMES FOR THE AGING, et al., Relators,**

v.

**DEPARTMENT OF HUMAN SERVICES, Respondent.**

No. C5–85–1891.

Court of Appeals of Minnesota.

April 15, 1986.

Review Denied June 13, 1986.

---

William E. Flynn, Margaret M. Van Valkenburg, O'Connor & Hannan, David Feinwachs, Kristin K. Larson, Minneapolis, for relators.

Samuel D. Orbovich, Broeker & Grant, Bloomington, for amicus curiae Minnesota Ass'n of Health Care Facilities.

Hubert H. Humphrey, III, Atty. Gen., Gary Van Cleve, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Human Services, respondent.

Heard, considered and decided by NIERENGARTEN, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

Relators seek a judgment pursuant to Minn.Stat. § 14.44 (1984) declaring Minn.R. 9549.0060, subp. 11.C.(3) invalid because it exceeds the Minnesota Department of Human Services' statutory authority and was adopted without compliance with rulemaking requirements. Relators also seek to have the Minnesota Department of Human Services' interpretation and application of Minn.Stat. § 256B.431, subd. 4, as amended by 1985 Minn.Laws, First Special Session, ch. 3, § 31, declared invalid. We affirm.

## FACTS

Relators represent nursing homes throughout the state. Nursing home costs for the care of eligible residents are reimbursed by the state medical assistance program. Nursing homes which participate in the medical assistance program are prohibited from charging private paying residents rates which exceed those approved for medical assistance recipients for similar services. Minn.Stat. § 256B.48, subd. 1(a) (1984). However, nursing homes may charge private paying residents a higher rate for a private room. *Id.*

Prior to 1983 prospective per diem rates were based on historical costs plus known cost changes. In calculating the allowable per diem rates, property-related costs were added to property taxes and administrative costs and divided by 93% of the total capacity days. A factor of 1.5 times the number of licensed private beds was used to determine the number of patient days in order to assign a greater portion of the cost to private rooms. Minn.R. 9510.0470, subp. 2 (1983).

In 1983 the legislature directed the Department of Human Services to begin to shift its system for reimbursements from one based on historical cost to one based on

operating costs and rental use of the property. Minn.Stat. § 256B.431. In response to the legislation, the Department of Human Services adopted a temporary rule effective from July 1983 through June 30, 1984. Temporary Rule 50 (12 MCAR §§ 2.05001–2.05016 (temporary)). A permanent rule establishing procedures for determining the payment rate for nursing homes participating in the medical assistance program was proposed in January 1985 and adopted on June 10, 1985. Minn.R. subpts. 9549.0010–0080 (1985); see 9 State Register 1716–39, 2660–69. Under the rules the total per diem payment rate is the "sum of the operating cost payment rate, the property-related payment rate, and the real estate tax and special assessments payment rate." Minn.R. 9549.0070, subp. 1. The formula for calculating the rental value is contained in part in subp. 9549.0060. The property-related payment rate factor is determined by dividing property-related costs by 96% of a home's license capacity days. Minn.R. 9549.0060, subp. 13.B.(1). "Capacity days" are defined as the number of licensed beds in a home times the number of days in the home's reporting period. Subp. 11.A.

As originally proposed, Rule 9549.0060 provided that in computing the number of capacity days, the number of licensed single bedrooms is multiplied by .5. This .5 capacity day adjustment was the subject of much testimony at the rulemaking hearing. In the comments submitted to the administrative law judge on April 1, the DHS proposed language which will allow a home to obtain a waiver for the .5 factor if the home agrees to three conditions:

(1) The nursing home shall agree not to request a private room payment in part 9549.0070, subpart 3 for any of ·its medical assistance residents in licensed single bedrooms.

(2) The nursing home shall agree not to use the single bedroom replacement cost new limit for any of its licensed single bedrooms in the computation of the allowable appraised value in subpart 4.

(3) The nursing home shall agree not to charge any private paying resident in a single bedroom a payment rate that exceeds the total payment rate established in part 9549.0070, subpart 1 by more than ten percent.

Minn.R. 9549.0060, subp. 11.C.

The administrative law judge concluded that the capacity days provision as amended was needed and reasonable and that the amendment did not constitute a substantial change to the rule. The Commissioner adopted the administrative law judge's findings and conclusions and the rule as proposed.

## ISSUES

1. Did the Department of Human Services exceed its statutory authority by adopting Minn.R. 9549.0060, subp. 11.C.(3)?

2. Did the Department of Human Services comply with statutory rulemaking procedures when it adopted the rule?

3. Can this court consider whether the Department of Human Services correctly established a temporary payment rate in a pre-enforcement ·rule challenge action?

## ANALYSIS

■ 1. In a declaratory judgment action challenging the validity of a rule provision, this court shall declare the rule invalid if we find "it violates constitutional provisions or exceeds the statutory authority of the agency or was adopted without compliance with statutory rulemaking procedures." Minn.Stat. § 14.45 (1984). This pre-enforcement challenge must be distinguished from a contested case action where a rule is sought to be enforced against a particular party and the validity of the rule as applied to that party is adjudicated. *Manufactured Housing Institute v. Pettersen*, 347 N.W.2d 238, 240 (Minn.1984). In a pre-enforcement challenge,

the standard of review is necessarily more restricted. Broad and far-reaching scrutiny of a rule or regulation, based upon hypothetical facts, is a premature exercise by the judiciary * * * *.

*Minnesota-Dakotas Retail Hardware Ass'n v. State,* 279 N.W.2d 360, 363 (Minn. 1979). Thus, the reasonableness of the rule *as applied* cannot be considered in this action. *Id.* at 363 n. 4. However, it may be considered in a contested case proceeding. *See Blocher Outdoor Advertising Company v. Minnesota Department of Transportation,* 347 N.W.2d 88, 91 (Minn. Ct.App.1984).

■ The relators do not allege a constitutional violation. Rather they contend that Rule 9549.0060, subp. 11.C.(3) effectively requires nursing homes to limit the rates charged to private paying residents for a private room and thereby exceeds statutory authority by violating the equalization law, Minn.Stat. § 256B.48, subd. 1(a). Specifically, they contend the rule violates the plain language of the exception to the equalization law which provides that a nursing home "may * * * charge private paying residents a higher rate for a private room * * *." *Id.*

Relators and amicus attack Rule § 9549.-0060, subp. 11.C.(3) in isolation. Under Rule § 9549.0060 a nursing home may either compute the home's· "capacity days" by applying a .5 multiplier to all the home's single bedrooms or limit the rate it charges non-medical assistant recipients for private rooms to 10% above the rate at which medical assistant recipients are charged for a double room. The multiplier merely allocates more property-related costs to single bedrooms. It does not limit the amount a home can charge a private paying resident for a single room. The home is free to set whatever rate it wishes for private single rooms. Therefore, DHS did not exceed its statutory authority by precluding a nursing home from charging private paying residents a higher rate for private rooms.

If a home chooses, it may allocate its property-related costs equally over all of the beds in the facility by waiving the .5 multiplier. In that case, it must accept the restrictions designed to prevent a home from both recovering costs associated with private rooms through medical assistance and obtaining additional revenues by charg-

ing higher rates for the private rooms. To the extent the acceptance of the waiver infringes upon a home's ability to establish private room rates, it is a *chosen* limitation.

Relators claim the alternative is illusory and that either a home which has private rooms will be unduly penalized or the equalization law will be extended contrary to the statute. The argument that a home will be penalized is addressed to the rule as it is applied, rather than to the rule on its face. On its face the rule does not exceed statutory authority because a home is not precluded from charging a higher rate for a private room. Any challenge to the rule as it is applied will necessarily need to be made in a contested case hearing when DHS is seeking to enforce the rule.

■ 2. Relators contend the limitation was not properly promulgated because it was not included in DHS's statement of need and reasonableness, it was not discussed at the hearing, and it constitutes a substantial change.

An agency statement of need and reasonableness must be filed before the agency publishes its notice of rulemaking. Minn. Stat. § 14.131 (1984). If it is mandatory that all parts of a rule be discussed in a statement of need and reasonableness, then no modifications could be allowed. However, the rulemaking procedure expressly contemplates modifications of proposed rules. *See* Minn.Stat. §§ 14.14, subd. 2a.; 14.15, subds. 1 and 3; 14.16, subd. 1. The administrative law judge must determine whether the rule has "been modified in a way which makes it substantially different from that which was originally proposed * * *." Minn.Stat. § 14.15, subd. 3 (1984). He or she must also determine whether the modification is needed and reasonable. Minn.Stat. § 14.15, subd. 4. In this case the administrative law judge found that the rule as amended is necessary and reasonable and that the amendments do not constitute a substantial change. There is no procedural error because the limitation was

not included in the statement of need and reasonableness.

While the limitation was not specifically discussed at the hearing, the capacity days provision was discussed and was the subject of post-hearing comment. The provision as modified to include the waiver and limitation was subject to comment during the response period and was criticized. We find no procedural error.

Finally, the relators argue that the rule is modified in such a way as to make it substantially different from that which was originally proposed. We agree with the administrative law judge that there was no substantial change. The original proposal remained intact. The amendment merely offered an alternative to the original proposal in the form of a waiver.

3. Relators challenge DHS's calculation of operating cost payment rates for the period beginning July 1, 1985, claiming that the department is using an unpromulgated rule which is inconsistent with the statute. Only formally promulgated rules may be challenged in a pre-enforcement action under Minn.Stat. § 14.44. *L.K. v. Gregg*, 380 N.W.2d 145, 149 (Minn. Ct.App.1986), *pet. for rev. denied* (March 14, 1986). The record in a pre-enforcement challenge is the record made in the rule-making proceeding. *Pettersen*, 347 N.W.2d at 241. Here there is no comparable record and thus there can be no review by this court. Relators can properly argue that DHS's rate determination constituted an unpromulgated rule in a contested case hearing.

### DECISION

The Department of Human Services did not exceed its statutory authority when it adopted Minn.R. 9549.0060. It complied with statutory rulemaking procedures when it adopted the rule. Relator's claim that DHS's practice is an unpromulgated rule can properly be made in a contested case hearing.

Affirmed.