**MINNESOTA CHAMBER OF COMMERCE, Petitioner,**

v.

**MINNESOTA POLLUTION CONTROL AGENCY, Respondent.**

No. C1–90–1904.

Court of Appeals of Minnesota.

April 23, 1991.

Review Denied July 24, 1991.

G. Robert Johnson, Robert S. Burk, Mark F. Ten Eyck, Thomas W. MacLeod, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for petitioner.

Hubert H. Humphrey, III, Atty. Gen., Eldon G. Kaul, Alan R. Mitchell, Stephen Shakman, Sp. Asst. Attys. Gen., St. Paul, for respondent.

Considered and decided by FORSBERG, P.J., and PARKER and AMUNDSON, JJ.

## OPINION

PARKER, Judge.

The Minnesota Chamber of Commerce seeks a declaratory judgment from this court under Minn.Stat. § 14.44 (1990). The Chamber argues that in adopting Minn.R. 7050 (1990), the Minnesota Pollution Control Agency (MPCA) exceeded its statutory authority, adopted rules without complying with rulemaking requirements, and violated constitutional provisions.

## FACTS

After the MPCA's Citizen Board authorized a hearing process on proposed amendments to water quality rules, the MPCA published both the proposed amendments and the requisite notice of hearings. The amendments proposed new numerical standards for 54 toxic substances and a methodology for establishing a statewide standard through a single, site-specific water quality determination.

Between February 1 and April 10, 1990, the MPCA held hearings at several locations within the state, including St. Paul, Marshall, Detroit Lakes, Brainerd, Duluth and Rochester. An administrative law judge (ALJ) assigned to the hearings by the chief ALJ presided over the hearings. In response to public comment, the MPCA withdrew its proposed standard for dioxin and revised part 7050.0218 to eliminate the setting of statewide standards through site-specific water quality determinations. As revised, part 7050.0218 establishes methodology for deriving site-by-site criteria to determine water quality standards for toxic substances not assigned numerical standards.

After the hearing process, the ALJ reviewed in a written report the rulemaking proceedings and recommended that the MPCA adopt the amendments. The ALJ concluded that the proposed changes to Minn.R. 7050.0218, which were made during the hearing process, did not constitute substantial change. Subsequently, the MPCA adopted Minn.R. 7050. The Chamber then petitioned this court for a pre-enforcement declaratory judgment that the MPCA exceeded its statutory authority, adopted rules without complying with rulemaking requirements, and violated constitutional provisions.

## ISSUES

1. Did the MPCA fail to consider social and economic factors and exceed its statutory authority when adopting Minn.R. 7050.0218 (1990)?

2. Does Minn.R. 7050.0218 (1990) allow the MPCA to engage in unpromulgated rulemaking in violation of constitutional due process?

3. Did the MPCA fail to comply with rulemaking requirements by adopting Minn.R. 7050.0218 (1990) as revised during the hearing process?

4. Does Minn.R. 7050 (1990), as it affects nonpoint source dischargers, violate constitutional due process by being void for vagueness?

## ANALYSIS

Minn.Stat. § 14.44 (1990) provides:

The validity of any rule may be determined upon the petition for a declaratory judgment thereon, addressed to the court of appeals, when it appears that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the petitioner. * * *

This court has original jurisdiction to determine the validity of an agency's rules, including amendments. *See* Minn.Stat. § 14.44; *see also* Minn.Stat. § 14.02, subd. 4 (1990) ("rule" defined). A section 14.44 declaratory judgment action is a pre-enforcement challenge:

[I]t questions the process by which the rule was made and the rule's general validity before it is enforced against any particular party.

*Manufactured Housing Institute v. Pettersen*, 347 N.W.2d 238, 240 (Minn.1984); *see* Minn.Stat. § 14.44.

Minn.Stat. § 14.45 (1990) defines this court's scope of review in a pre-enforcement challenge. *See Pettersen*, 347 N.W.2d at 240. Section 14.45 provides:

In proceedings under section 14.44, the court shall declare the rule invalid if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was adopted without compliance with statutory rulemaking procedures.

The standard of review in a pre-enforcement action differs from that in a contested-case appeal:

[T]he standard of review is necessarily more restricted. Broad and far-reaching

scrutiny of a rule or regulation, based upon hypothetical facts, is a premature exercise of the judiciary when the action application or enforcement of the rule remains subject to prosecutorial discretion or formal or informal variance or waiver procedures.

*Minnesota–Dakotas Retail Hardware Ass'n v. State,* 279 N.W.2d 360, 363 (Minn. 1979) (comparing *Reserve Mining Co. v. Minn. P.C.A.,* 294 Minn. 300, 200 N.W.2d 142 (1972)); *see also Minn. Ass'n of Homes for the Aging v. Dep't of Human Serv.,* 385 N.W.2d 65, 67 (Minn.App.1986), *pet. for rev. denied* (Minn. June 13, 1986); *Pettersen,* 347 N.W.2d at 241.

■ This court must apply the "arbitrary and capricious" test to the agency's rulemaking proceedings. In *Pettersen* the supreme court explained:

It appears, therefore, that the legislature intended the traditional "arbitrary and capricious" test, rather than the more rigorous "substantial evidence" test, to apply in rulemaking proceedings. We so hold. Nevertheless, in determining if the agency acted arbitrarily and capriciously the court must make a "searching and careful" inquiry of the record to ensure that the agency action has a rational basis.

\*     \*     \*     \*     \*     \*

Further, the agency must explain on what evidence it is relying and how that evidence connects rationally with the agency's choice of action to be taken.

*Pettersen,* 347 N.W.2d at 244 (footnotes and citations omitted).

When applying the arbitrary and capricious test, "[d]eference is to be shown agency expertise, but the agency must explain on what evidence it is relying and how that evidence connects rationally to the rule involved." G. Beck, L. Bakken, T. Muck, *Minnesota Administrative Procedure* at 417 (1987) (citing *Pettersen,* 347 N.W.2d at 244). The deference shown to agency expertise restricts "judicial functions to a narrow area of responsibility." *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 825 (Minn.1977), *cited in Pettersen,* 347 N.W.2d at 244. The record in a section

14.44 challenge is "the record made in the rulemaking proceeding." *Minn. Ass'n of Homes for the Aging,* 385 N.W.2d at 69 (citing *Pettersen,* 347 N.W.2d at 241).

### I. *Consideration of Social and Economic Factors*

■ The stated purpose of Minn.R. 7050.0218, subp. 2, is to establish methods

to address on a site-by-site and case-by-case basis the discharge into surface waters of toxic pollutants not listed in part 7050.0220.

15 Minn.Admin.Reg. 1058, 1059 (1990) (current publication of rule). Minn.Stat. §§ 115.43, subd. 1, and 116.07, subd. 6 (1990), require the MPCA to consider "social and economic" factors when exercising its power and duties.

■ The ALJ identified toxic pollutants as a problem; he concluded that unlisted toxics are rationally connected to part 7050.0218. *See Broen Memorial Home v. Dep't of Human Serv.,* 364 N.W.2d 436, 440 (Minn.App.1985); Minn.Stat. § 14.14 (1990); *see also Pettersen,* 347 N.W.2d at 244.

When considering the need for, and the reasonableness of, the proposed rule, the ALJ stated:

The risk identified is that toxic chemicals may be discharged into Minnesota's surface waters in concentrations which may be acutely or chronically toxic to aquatic life or which may present chronic toxicity dangers to wildlife and persons who consume fish and water from these lakes and rivers. \* \* \* The Agency has identified well over 100 toxic chemicals having no EPA criteria which have been, or may be expected to be, discharged to surface waters in Minnesota. Forty of those 100 were selected as having the highest priority. \* \* \* For 25 of these 40 toxics, adequate data was available for the Agency to propose numerical standards, which are found in part 7050.0220. For the remaining toxics identified, as well as for other toxic chemicals whose danger is not presently recognized by the Agency,

the derived criteria procedures of part 7050.0218 are proposed as the solution.

\* \* \* \* \* \*

The methodology utilized to develop the numerical standards in proposed part 7050.0220 has not been challenged in these proceedings. That same methodology, developed by the United States Environmental Protection Agency (EPA) and modified for Minnesota conditions, is employed in the derived criteria procedures proposed for part 7050.0218. Adjustments (in the conservative direction) are made where less aquatic life species data are available. This methodology is a rational solution to the practical need to develop toxics criteria beyond those in the numerical standards.

The ALJ in his analysis has done, we believe, a remarkably thorough job of analysis and communication by making findings as understandable as possible for a reviewing court. This did appear to involve agency expertise, and we give deference to the agency because this case involves technical issues of public health and the environment.

It is difficult to conclude that the MPCA arbitrarily and capriciously failed to consider social and economic factors, when public hearings were held in several locations and when the MPCA responded to public reaction by revising some of the proposed amendments. Part 7050.0218, which is for the protection of human health and the environment, is needed and reasonable.

In *Reserve Mining Co. v. Herbst*, 256 N.W.2d at 841, the court stated:

We are not free to barter the health of residents at Silver Bay for their economic security, even if that were their intention, which it is not. It is only where the likelihood of danger to the public is remote and speculative that economic impacts which are devastating and certain may be weighed in the balance to arrive at an environmentally sound decision.

While *Herbst* was not a pre-enforcement action, it discussed the public health context in which courts and agencies may be required to consider social and economic effects. *Id.* *Herbst* suggests that courts

and agencies should not ignore public health in an effort to maintain economic security. Here we are discussing public health, and the hazards which could result do not appear remote.

The ALJ concluded:

[T]he Agency, in its SONAR [Statement of Need and Reasonableness], has established that total monitoring and treatment costs for municipal dischargers will not exceed current costs by $100,000 statewide, without considering a "set off" for communities who actually will save costs, as a result of the proposed rule amendments during either of the two years following adoption of the proposed rule amendments.

We agree that the MPCA adequately addressed the economic impact of the proposed rule and conclude that it did not act arbitrarily or capriciously.

We further conclude that there is a rational connection between the problem identified and the solutions proposed. The rulemaking record establishes that the agency considered the requisite factors under Minn.Stat. §§ 115.43, subd. 1, and 116.07, subd. 6. Accordingly, the MPCA did not exceed its statutory authority.

## II. *Site–Specific Water Quality Standards*

Minn.R. 7050.0218 allows the MPCA staff to quantify the toxicity of substances without rulemaking procedures when Minn.R. 7050.0220 does not provide a numerical water quality standard. The Chamber contends that this violates procedural due process. The Chamber further argues that by adopting the federal risk assessment guidelines, the agency can change part 7050.0218 without rulemaking procedures. The MPCA makes no claim that application of site-specific criteria will have any general application.

Minn.Stat. § 14.45 grants this court authority to invalidate a rule if it violates a constitutional provision. Procedural due process guarantees notice and an opportunity to be heard. *Hough Transit, Ltd. v. Harig*, 373 N.W.2d 327, 333 (Minn. App.1985).

' In *Pettersen,* 347 N.W.2d at 243, the court stated:

> In attacking a statute or regulation on due process grounds, one bears a heavy burden; the statute or rule need only bear some rational relation to the accomplishment of a legitimate public purpose to be sustainable.

*See also Minnesota Administrative Procedure* at 415.

▮ During the rulemaking process, the MPCA gave notice and afforded an opportunity to be heard. Part 7050.0218 provides notice of the criteria that will be used to protect surface waters from toxic pollutants in the absence of numerical standards. It calls for site-specific water quality criteria. *See* Minn.R. 7050.0218, subp. 1.

The methodology under part 7050.0218 has two components, a bioaccumulation (BAF)/bioconcentration (BCF) conversion factor and a risk assessment factor. The BAF/BCF conversion factor is an equation for converting BCF to BAF. *See* Minn.R. 7050.0218, subp. 7B(8). A BCF, or bioconcentration factor, is a sample derived from a concentration exposed only to the water as a source of substance. A BAF, or bioaccumulation factor, is a sample derived from a concentration exposed from the diet and bottom sediments in addition to the water column. The BAF/BCF conversion factor estimates the buildup of a toxicant in aquatic life. The risk assessment factor is derived by applying federal risk assessment guidelines. The application of these guidelines allows the agency to use the best scientific information available when determining site-specific water standards. The ALJ found the proposed methodology needed and reasonable.

These water quality determinations will not have the effect of rules. *See* Minn.R. 7050.0218, subp. 2. The application of Minn.R. 7050.0218 will be based on facts as applied to a specific party. Thus, the agency's enforcement of this part will result in "site-by-site and case-by-case" policymaking. *See In re Crown Coco, Inc.,* 458 N.W.2d 132, 136–37 (Minn.App.1990) (a rule has general application and future effect,

whereas a policy may be based on facts as applied to a specific party).

Part 7050.0218 is the result of rulemaking. The agency claims no general applicability or future effect of the site-specific determinations. *Cf. Crown Coco,* 458 N.W.2d at 137 (Petrofund Board's resolution not to reimburse costs already covered by insurance held to be a rule, not a policy); *SA–AG, Inc. v. Minn. Dep't of Transp.,* 447 N.W.2d 1, 5 (Minn.App.1989) (Department of Transportation exceeded its authority by issuing a statement interpreting a statute rather than stating it). The development of site-specific criteria does not come within the definition of a rule because it is not an agency statement of general applicability and future effect. *See* Minn. Stat. § 14.02, subd. 4 (1990).

We conclude that part 7050.0218 does not allow the agency to engage in unpromulgated rulemaking. Moreover, a party who is dissatisfied with the agency's application of part 7050.0218 can request a contested-case hearing. *See* Minn.R. 7000.1000 (1984) ("[a]ny person may request the agency to hold a contested case hearing on any matter"); *see also* Minn.R. 7001.0130 (1984) (specifies findings that mandate contested-case hearings). The public health requires protection against toxic pollutants. Part 7050.0218 is a "rational solution" for developing standards for toxic substances not assigned numerical standards in part 7050.0220 and affords due process when applied in an individual case. Upon review of this facial challenge, we hold that part 7050.0218 does not violate due process.

### III. *Revision During the Hearing Process*

The Chamber argues that the ALJ erred by finding that the agency's revision of part 7050.0218 during the hearing process did not constitute a substantial change. The MPCA responds that Minn.Stat. § 14.15 contemplates modification of proposed rules during the rulemaking process.

Minn.Stat. § 14.05, subd. 2 (1990), provides:

> An agency may modify a proposed rule in accordance with the procedures of the administrative procedure act. However, ·

an agency may not modify a proposed rule so that it is substantially different from the proposed rule in the notice of intent to adopt rules.

Minn.R. 1400.1100, subp. 2 (1989), sets the standard for the ALJ to follow when considering substantial change:

In determining whether a proposed final rule or rule as adopted is substantially different, the administrative law judge or the chief administrative law judge shall consider the extent to which it affects classes of persons who could not have reasonably been expected to comment on the proposed rules at the rulemaking hearing, or goes to a new subject matter of significant substantive effect, or makes a major substantive change that was not raised by the original notice of hearing in such a way as to invite reaction at the hearing, or results in a rule fundamentally different in effect from that contained in the notice of hearing.

The ALJ concluded that "the proposed changes to part 7050.0218 made during the hearing process do not constitute a substantial change." The ALJ explained the change:

[T]he public impacted by this part had notice that the current unspecified toxics provision dealt with discharges on a case-by-case basis and the change proposed in January could have been read to represent a shift to a "first case determines the standard" basis. Thus, the regulated public was informed of the two possible outcomes. The Agency, consistent with the requirements of the Minnesota Administrative Procedure Act, has returned to the case-by-case limitations on site-specific determinations, as they exist currently. Therefore, there has been no development beyond the scope evident to an informed member of the public at the outset of the hearing. * * * Accordingly, there can be no finding of a substantial change on this basis.

Contrary to the Chamber's assertion, the ALJ compared the proposed rule with the revised rule by discussing their different effects. Minn.R. 1400.1100, subp. 2, does not require written findings of the consid-erations. Moreover, the ALJ considered the "public impacted," their notice and opportunity to be heard, the subject matter of the revision, and the content of the original notice. While the ALJ does not make specific findings regarding the criteria of Minn.R. 1400.1100, subp. 2, his conclusion reflects the considerations listed in the rule.

■ The change to part 7050.0218 does not raise a new subject matter but, rather, restores part of the procedure followed before the proposed amendments. *Cf. City of Morton v. MPCA*, 437 N.W.2d 741, 747–48 (Minn.App.1989) (the MPCA's revision of a proposed rule for a water waste treatment facility did not constitute substantial change). In *Morton* the rule as originally published by the MPCA provided sufficient notice, and the revision did not raise any new subject matter. *Id.* The revision could have been anticipated at the hearing, and the MPCA changed the rule in response to valid concerns raised at the public hearings. *See Minnesota League of Credit Unions v. Minn. Dep't of Commerce*, 467 N.W.2d 42 (Minn.App. Mar. 19, 1991). We are perplexed by the nature of the Chamber's argument, because the revision was made as a dutiful response to valid public criticism. The rule as originally proposed allowed the MPCA to promulgate rules without following proper rulemaking procedures. Had the MPCA adopted the original proposal, it may well have exceeded its statutory authority and violated procedural due process. By revising part 7050.0218, however, the MPCA has withdrawn any claim of rulemaking effect.

We agree with the ALJ that the affected, informed public was aware of the prior rule and the proposed rule. The factors as adopted in this rule were described thoroughly in the SONAR. The notice function had been observed. Therefore, the revision of the proposal did not constitute substantive change.

### IV. *Nonpoint Dischargers*

The Chamber claims that part 7050 concerning nonpoint dischargers, not yet determined, is unconstitutionally vague because

the MPCA did not disclose "how it intends to enforce against nonpoint sources."

Statutes and rules must meet due process standards of definiteness under the United States and Minnesota Constitutions. *See State v. Normandale Properties, Inc.*, 420 N.W.2d 259, 261 (Minn.App.1988), *pet. for rev. denied* (Minn. May 4, 1988). In attacking a rule on due process grounds, including a vagueness challenge, the challenger bears a heavy burden. *Pettersen*, 347 N.W.2d at 243. The standard for determining vagueness is well settled:

> A rule, like a statute, is void for vagueness if it fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited or fails to provide sufficient standards for enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99 [33 L.Ed.2d 222] (1972).

*In re N.P.*, 361 N.W.2d 386, 394 (Minn. 1985). The Minnesota Supreme Court further explained:

> [T]he rule "should be upheld unless the terms are so uncertain and indefinite that after exhausting all rules of construction it is impossible to ascertain legislative intent."

*In re N.P.*, 361 N.W.2d at 394 (quoting *Getter v. Travel Lodge*, 260 N.W.2d 177, 180 (Minn.1977). In discussing criminal statutes, the Minnesota Supreme Court stated, "Persons of common intelligence must not be left to guess at the meaning of a statute nor differ as to its application." *State v. Newstrom*, 371 N.W.2d 525, 528 (Minn.1985) (citing *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1925).

In *Normandale Properties*, 420 N.W.2d at 262, this court held that "[t]he hazardous waste statute is not unconstitutionally vague on its face or as applied to the facts." This court, citing *United States v. Powell*, 423 U.S. 87, 92, 96 S.Ct. 316, 319–20, 46 L.Ed.2d 228 (1975), stated that a statute will be upheld against a facial challenge "[u]nless the statute proscribes no comprehensible course of conduct at all." *Normandale Properties*, 420 N.W.2d at 262. The court further resolved that a statute is not unconstitutional merely be-

cause the legislature "could have defined hazardous waste more precisely." *Normandale Properties*, 420 N.W.2d at 269.

The *Normandale Properties* court also addressed the use of hypothetical situations when reviewing a statute for vagueness:

> The person charged must show the statute "lacks specificity as to his own behavior and not as to some hypothetical situation."

*Normandale Properties*, 420 N.W.2d at 262 (quoting *State v. Currie*, 400 N.W.2d 361, 365 (Minn.App.1987), *pet. for rev. denied* (Minn. Apr. 17, 1987)); *see also Village of Hoffman Estates v. Flipside Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). This court should not engage hypothetical applications in a pre-enforcement challenge. *Pettersen*, 347 N.W.2d at 241. It is "a premature exercise by the judiciary." *Id.* In a pre-enforcement action the reasonableness of the rule as applied cannot be considered, but the reasonableness of the application may be considered in a contested-case hearing.

The standards promulgated in chapter 7050 bear a rational relation to the accomplishment of the legitimate public purpose of maintaining water quality. *See Pettersen*, 347 N.W.2d at 243. The Chamber failed to meet the heavy burden assumed in bringing a vagueness challenge. Procedural due process is satisfied by the availability of the permitting process for nonpoint dischargers under chapter 7050, contested-case hearings under Minn.R. 7000.1000 and 7001.0130, and variance procedures under Minn.R. 7000.0700 (1989).

## DECISION

Minn.R. 7050 neither violates a constitutional provision nor exceeds statutory authority. In addition, the MPCA complied with rulemaking procedures before adopting the revisions to chapter 7050. Accordingly, we deny the Chamber's petition.

Petition denied.