**FARIBAULT COUNTY,
et al., Respondents,**

v.

**MINNESOTA DEPARTMENT
OF TRANSPORTATION,
et al., Appellants.**

No. C9–90–2508.

Court of Appeals of Minnesota.

June 18, 1991.

Review Denied Aug. 29, 1991.

Michael H. Daub, Minneapolis, for respondents.

Hubert H. Humphrey, III, Atty. Gen., Donald J. Mueting, Asst. Atty. Gen., St. Paul, for appellants.

Considered and decided by PETERSON, P.J., and PARKER and FOLEY, JJ.

## OPINION

PETERSON, Judge.

The trial court issued a preliminary injunction enjoining the state from requiring local governments to comply with Minnesota's prevailing wage law on projects financed in whole or part by state-aid funds until such a requirement is adopted as a rule by the Department of Transportation through a rulemaking hearing. We reverse.

## FACTS

The Minnesota Constitution provides for the construction, improvement, and maintenance of a county state-aid highway system and a municipal state-aid street system. Minn. Const. art. XIV, §§ 3, 4. To pay some of the costs associated with these two systems, the constitution created a county state-aid highway fund and a municipal state-aid street fund. Minn. Const. art. XIV, §§ 7, 8.

The money in these two funds is generated by highway user taxes that the legislature is authorized to levy under Minn. Const. art. XIV, §§ 9, 10. Money from the two funds is paid directly to governmental subdivisions to finance projects contracted for by the governmental subdivisions. Minn.Stat. §§ 162.06–.09, 162.12–.15.

Minn.Stat. §§ 177.41–.44 (1990), commonly known as the prevailing wage law, was originally enacted by the Minnesota Legis-

lature in 1973. The statute requires that workers employed to build, remodel, or repair a public building or other public work financed in whole or part by state funds be paid a prevailing wage rate.

From 1973 to 1987, the state did not enforce the prevailing wage law on highway and street projects contracted for by counties and cities and paid for in whole or part with county state-aid highway funds or municipal state-aid street funds. By memorandum on January 14, 1988, and again on July 15, 1988, Attorney General Hubert H. Humphrey, III advised state and local officials that Minn.Stat. §§ 177.41–.44 required all contracts for public works projects funded in whole or part by state funds to include provisions for the enforcement of the prevailing wage law. This requirement applied whether the project was contracted for by the state or a political subdivision.

The Commissioner of Transportation is empowered to make and promulgate rules regarding the county state-aid highway system and the municipal state-aid street system. Minn.Stat. §§ 162.02, subd. 1, 162.09, subd. 1 (1990). On April 30, 1990, the Commissioner issued a written notice to all Minnesota counties and municipalities advising recipients of state-aid funds that, effective on all bids opened on or after May 21, 1990, "no state-aid funds will be provided to any project that does not include a contract provision for the payment of prevailing wages."

Faribault County, a recipient of county state-aid highway funds, and other governmental subdivisions that receive state-aid highway or street funds, commenced an action to declare unenforceable the notice issued by the Commissioner of Transportation on April 30, 1990. Respondents argued that the notice constituted a rule, which must be adopted pursuant to procedures set forth in the Minnesota Administrative Procedure Act, Minn.Stat. §§ 14.-001–.69 (1990). Respondents also sought a temporary restraining order to prevent enforcement of the Commissioner's notice. A temporary restraining order that enjoined enforcement of the notice was granted un-

til further hearing of the court or until a contested rulemaking hearing was conducted and a decision rendered. After a further hearing, a motion for a temporary injunction was granted enjoining enforcement of the notice until a trial on the merits or until a contested rulemaking hearing could be held and a decision rendered. This appeal is from the trial court order granting the motion for a preliminary injunction.

## ISSUE

Did the trial court err in granting a preliminary injunction enjoining the state from enforcing the prevailing wage law on local projects funded in whole or part by county state-aid highway funds or municipal state-aid street funds?

## ANALYSIS

■■ The disputed section of the prevailing wage statute reads:

It is in the public interest that public buildings and other *public works* be constructed and maintained by the best means and highest quality of labor reasonably available * * *. It is therefore the policy of this state that wages of laborers, workers, and mechanics *on projects financed in whole or part by state funds* should be comparable to wages paid for similar work in the community as a whole.

Minn.Stat. § 177.41 (emphasis added).

Respondents contend that the Commissioner's notice requiring local government units to pay prevailing wages on all projects funded in whole or part by state-aid funds is an interpretive rule, which could only be promulgated through a contested rulemaking hearing. Because the prevailing wage law had not previously been enforced on state-aid highway and street projects, the trial court concluded that the terms "public works" and "projects" were ambiguous, and that the Commissioner's notice was a new interpretation of the statute. Therefore, the trial court granted injunctive relief based on its finding that the respondents' would likely prevail at trial.

Minn.Stat. § 14.02, subd. 4 (1990) defines a rule as:

[E]very agency statement of general applicability and future effect, including amendments, suspensions, and repeals of rules, adopted to implement or make specific the law enforced or administered by that agency or to govern its organization or procedure.

Neither party questions whether the notice is a statement by the Commissioner of general applicability and future effect. The dispute is whether the notice is merely a statement of clear statutory law, or an attempt "to make specific the law enforced."

■ If the notice is simply an announcement of a clear statutory requirement that the prevailing wage law be applied to state-aid funded projects contracted for by counties and cities, it is not a rule. *See Wacha v. Kandiyohi Cty. Welfare Bd.*, 308 Minn. 418, 420–21, 242 N.W.2d 837, 839 (1976). If the notice is an interpretation of words within the statute that may be susceptible to more than one meaning, the interpretation is a rule and may only be promulgated through the administrative rulemaking process. *See Sa–Ag, Inc. v. Minnesota Dept. of Transp.*, 447 N.W.2d 1, 4 (Minn.App. 1989).

Minn.Stat. § 177.41 was enacted in 1973. The section originally read:

It is in the public interest that public buildings and other *public works* be constructed and maintained by the best means and highest quality of labor reasonably available, and that persons working on public works be compensated according to the real value of the services they perform. It is therefore declared to be the public policy of this state that wages of laborers, workmen and mechanics *engaged in state projects* should be comparable to wages paid for similar work in the community as a whole.

Minn.Stat. § 177.41 (1973 Supp.) (emphasis added).

The statute was amended by 1975 Minn. Laws ch. 191, § 1 to read as follows:

It is in the public interest * * * that wages of laborers, workmen and mechan-

ics *engaged in state projects financed in whole or part by state funds* should be comparable to wages paid for similar work in the community as a whole.

(Emphasis added). Appellants contend this amendment was an attempt to extend coverage of the act to include not only state projects, but local government projects financed in whole or part by state funds. This extension would apply to local street and highway projects funded by state-aid money.

The statute was amended by 1984 Minn. Laws ch. 628, art. 4 to its present form:

It is in the public interest * * * that wages of laborers, workers, and mechanics *on projects financed in whole or part by state funds* should be comparable to wages paid for similar work in the community as a whole.

(Emphasis added). This amendment was exclusively a change in style and was not meant to be construed by a court to alter the meaning of the law. 1984 Minn.Laws ch. 628, art. 6.

We believe the meaning of the statute without the modifier "state" is clear and free from ambiguity. It requires the prevailing wage to be paid on all projects funded in whole or part by state funds regardless of whether the contracting authority is the state or a political subdivision.

Because the legislature specifically declared that the amendment in 1984 was not intended to change the meaning of the law, we must conclude that the clear meaning following the 1984 amendment is the meaning the legislature intended before the amendment. Any ambiguity caused by the existence of the word "state" in the statute prior to 1984 was removed by the 1984 amendment.

■ Respondents argue that the funds in the state-aid systems are not state funds because under article XIV the funds belong to the local government units and the state merely apportions them according to procedures set up by the law. We disagree. Sections 9 and 10 of article XIV authorize only the legislature to levy taxes to provide

money for the highway user tax distribution fund created by article XIV, section 5. Although article XIV, section 5 contains a distribution formula that apportions proceeds in the fund among the trunk highway fund, the county state-aid highway fund, and the municipal state-aid street fund, the actual amounts of money in any of these funds is determined by the legislature when it sets the amount of any tax levied under article XIV, sections 9 and 10. Also, five percent of the highway user tax distribution fund may be distributed to any of the three funds in amounts determined by the legislature. Minn. Const. art. XIV, section 5. Furthermore, the amount of money an individual county or city receives from the county state-aid highway fund or the municipal state-aid street fund is determined according to a formula established by the legislature. Minn.Stat. §§ 162.07, 162.13 (1990). Because the legislature ultimately determines the amount of tax proceeds to be paid into each of the funds and also determines the amount that a local government unit receives from the funds, we believe the funds must be considered state funds.

## DECISION

Because Minn.Stat. § 177.41 requires that prevailing wages be paid on all projects funded in whole or part by state funds regardless of whether the contracting authority is the state or a political subdivision, we find the trial court erred in granting a preliminary injunction enjoining the state from enforcing the statute on local projects funded by state-aid funds. Therefore, we reverse.

Reversed.