*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0122**

Waste Management of Minnesota, Inc.,
Petitioner,

vs.

Minnesota Pollution Control Agency,
Respondent.

**Filed August 11, 2014
Affirmed
Klaphake, Judge***

Minnesota Pollution Control Agency
File No. OAH 68-2200-30906

Jack Y. Perry, Diane Bratvold, Matthew A. Slaven, Briggs & Morgan, P.A., Minneapolis, Minnesota (for petitioner)

Lori Swanson, Attorney General, Ann E. Cohen, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Cleary, Chief Judge; Larkin, Judge; and Klaphake, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**KLAPHAKE**, Judge

In this declaratory judgment action, petitioner Waste Management of Minnesota, Inc. (Waste Management), challenges an administrative law judge (ALJ) decision, that although respondent Minnesota Pollution Control Agency (MPCA) violated the rulemaking provisions of the Minnesota Administrative Procedure Act (MAPA) by informing Waste Management of its intent to implement a new strategy to enforce Minn. Stat. § 473.848 (2012), which imposes restrictions on disposal of unprocessed mixed municipal solid waste (MMSW), its strategy was exempt from rulemaking requirements.[1] In its related appeal, MPCA argues that the proposed strategy was not a rule. We conclude that MPCA's strategy is a rule, but that it is not subject to MAPA's rulemaking procedures because MPCA's action merely enforces section 473.848, and is consequently exempt. We therefore affirm.

## DECISION

A person may petition under MAPA for an ALJ determination "that an agency is enforcing or attempting to enforce a policy, guideline, bulletin, criterion, manual standard, or similar pronouncement as though it were a duly adopted rule." Minn. Stat. § 14.381, subd. 1 (2012). When an agency "enforces a law or rule by applying the law or

---

[1] "Unprocessed waste" is defined as waste that "has not, after collection and before disposal, undergone separation of materials for resource recovery through recycling, incineration for energy production, production and use of refuse-derived fuel, composting, or any combination of these processes so that the weight of the waste remaining that must be disposed of in a mixed municipal solid waste disposal facility is not more than 35 percent of the weight before processing, on an annual average." Minn. Stat. § 473.848, subd. 5.

rule to specific facts on a case-by-case basis," the "agency determination is not considered an unadopted rule[.]" Minn. Stat. § 14.381, subd. 1(b) (2012). As with an action to challenge the validity of a rule under Minn. Stat. § 14.44 (2012), section 14.381 provides this court with jurisdiction in a declaratory judgment action. *See Minn. Chamber of Comm. v. Minn. Pollution Control Agency*, 469 N.W.2d 100, 102 (Minn. App. 1991), *review denied* (Minn. July 24, 1991) ("This court has original jurisdiction to determine the validity of an agency's rules, including amendments."); Minn. Stat. § 14.381, subd. 2 (stating that the ALJ decision "may be appealed under sections 14.44 and 14.45," which determine the validity of agency rules).[2]

*Statutory language*

We must first decide whether the ALJ properly ruled that MPCA violated the rulemaking provisions of MAPA by informing Waste Management, among others, that it intended to enforce Minn. Stat. § 473.848. The statute governs how unprocessed MMSW must be disposed of in the metropolitan area as part of the implementation of state statutory waste management and landfill abatement objectives. *Id.* The relevant portions of section 473.848 provide:

> Subd. 1. Restriction. (a) For the purposes of implementing the waste management policies in section 115A.02 and metropolitan area goals related to landfill

---

[2] MPCA argues that section 14.381, subdivision 2 does not provide Waste Management a right of appeal in this case. Because the statute specifically provides that the ALJ "decision" under this statute may be appealed "under sections 14.44 and 14.45," and those sections permit a declaratory judgment action in this court when agency action or threatened agency action impairs the rights of the petitioner, Waste Management has a specific right of appeal.

3

abatement established under this chapter, a person may not dispose of unprocessed mixed municipal solid waste generated in the metropolitan area at a waste disposal facility unless the waste disposal facility meets the standards in section 473.849 and:

(1) The waste has been certified as unprocessible by a county under subdivision 2; or

(2)(i) the waste has been transferred to the disposal facility from a resource recovery facility;

(ii) no other resource recovery facility serving the metropolitan area is capable of processing the waste; and

(iii) the waste has been certified as unprocessible by the operator of the resource recovery facility under subdivision 3.

. . . .

Subd. 2. County certification; office approval. (a) By April 1 of each year, each county shall submit an annual certification report to the office detailing:

(1) the quantity of waste generated in the county that was not processed prior to transfer to a disposal facility during the year preceding the report;

(2) the reasons the waste was not processed;

(3) a strategy for development of techniques to ensure processing of waste including a specific timeline for implementation of those techniques; and

(4) any progress made by the county in reducing the amount of unprocessed waste.

. . . .

Subd. 3. Facility certification. The operator of each resource recovery facility that receives waste from counties in the metropolitan area shall certify as unprocessible each load of mixed municipal solid waste it does not process. Certification must be made to each county that sends its waste to the facility at intervals specified by the county. Certification must include at least the number and size of loads certified as unprocessible and the reasons the waste is unprocessible. Loads certified as unprocessible must include the loads that would otherwise have been processed but were not processed because the facility was not in operation, but nothing in this section relieves the operator of its contractual obligations to process mixed municipal solid waste.

4

*Legislative and regulatory history*

We necessarily recount a brief history of MPCA's actions in the years preceding this declaratory judgment action. Three of the four landfills in Minnesota that receive MMSW from the metropolitan area are owned by Waste Management. Four resource recovery facilities in Minnesota accept MMSW from the metropolitan area. By statute, MPCA was required to revise the metropolitan long range policy plan for solid waste management and to provide for public comment to proposed revisions and appellate review of standards adopted in the plan. Minn. Stat. § 473.149, subd. 1, 3 (2012). In March 2011, MPCA adopted a "Revised Policy Plan" that includes "quantifiable goals for the amount of MMSW that is handled through recycling, source reduction, resource recovery, and landfilling, as provided for by Minn. Stat. § 473.149, subd. 2d [2012]." The Revised Policy Plan adopts criteria for determining when waste is "unprocessible" for purposes of Minn. Stat. § 473.848. Under those criteria, MMSW is "unprocessible when all reasonably available capacity within the [metropolitan area resource recovery] processing system is fully utilized at 100 percent of its operating capacity." The Revised Policy Plan requires counties to certify when MMSW is unprocessible because of inadequate processing capacity and to provide "at least" annual certifications of compliance with Minn. Stat. § 473.848.

In 2012, the legislature directed MPCA to prepare a final report "on how compliance with Minnesota Statutes, section 473.848 may be achieved" by October 1, 2012. 2012 Minn. Laws, ch. 272, § 93 at 1125. *See* Minn. Stat. § 473.149, subd. 6 (2012) (requiring MPCA to report to legislature in odd-numbered years on "whether the

5

objectives of the metropolitan abatement plan have been met and whether each county . . . [has] achieved objectives set for it in the plan."). The report prepared by MPCA states that the four metropolitan landfills "are not in compliance with the restriction on disposal" included in Minn. Stat. § 473.848, subd. 1(a), and proposes amendment of landfill permits "to restrict landfills from accepting unprocessed metropolitan MMSW unless the waste has been certified by the county as unprocessible."[3]

By letter dated June 26, 2013, MPCA notified Waste Management and other interested parties that "hundreds of thousands of tons of mixed waste has bypassed resource recovery facilities and [was] directed to land disposal, contrary to state law," and that MPCA intended to reverse this trend by implementing the strategy contained in the 2012 legislative report, in order to "obtain[] compliance with Minn. Stat. § 473.848." MPCA also sent two emails to Waste Management indicating draft permit language and asking for comment.

In response, Waste Management filed a petition with the office of administrative hearings (OAH) seeking a determination that MPCA was improperly implementing its "strategy for compliance with Minn. Stat. § 473.848 as though it was a duly adopted rule" and requesting "an order directing that MPCA cease such implementation of its strategy." (Quotations omitted.) The matter was heard before the ALJ on August 30, 2013. The ALJ issued an order on December 20, 2012 that dismissed the petition because MPCA was not "improperly implementing its 'strategy' for compliance with Minn. Stat.

---

[3] The report defines waste as "unprocessible" "when all reasonably available capacity within the Twin Cities Metropolitan Area processing system is fully utilized."

6

§ 473.848 as though it was a duly adopted rule," and ordered Waste Management to pay costs. In the memorandum attached to its order, the ALJ rejected both parties' characterizations of the MPCA's strategy and defined the strategy to include:

> (1) amendments to landfill permits to preclude disposal of unprocessed, metropolitan MMSW waste that has not been certified as unprocessible by a county or resource recovery facility prior to landfilling; (2) amendments to resource recovery facility permits to require that such facilities only certify waste that is unprocessible; and (3) monthly reporting by landfills and resource recovery facilities.

The ALJ also found that "[t]he determination of whether waste is 'unprocessible' is to be made by the counties and resource recovery facilities according to the criteria established in the Revised Policy Plan." The ALJ concluded that the strategy met the definition of a rule under Minn. Stat. § 14.02, subd. 4 (2012), but determined that each of its provisions were exempt from rulemaking requirements because they were "expressly authorized by Minn. Stat. § 473.848, Minn. R. 7001.0150, or set forth in the Revised Policy Plan, which is exempt from rulemaking." On appeal, MPCA characterizes its actions as merely proposing a strategy to enforce an existing statute, while Waste Management argues that MPCA's actions amount to rulemaking.

### *MPCA's strategy is a rule*

An agency rule is "every agency statement of general applicability and future effect . . . adopted to implement or make specific the law enforced or administered by that agency." Minn. Stat. § 14.02, subd. 4 (2012). But when an agency interprets a statute and its interpretation is in accordance with the statute's plain meaning, the agency is deemed not to have promulgated a rule. *Cable Commc'ns Bd. v. Nor-West Cable*

7

*Commc'ns P'ship*, 356 N.W.2d 658, 667 (Minn. 1984); *Faribault Cnty. v. Minn. Dep't of Transp.*, 472 N.W.2d 166, 170 (Minn. App. 1991) (distinguishing between an agency's "announcement of a clear statutory requirement," which is not a rule, and an agency's "interpretation of words within the statute that may be susceptible to more than one meaning," which is a rule and "may only be promulgated through the administrative rulemaking process), *review denied* (Minn. Aug. 29, 1991); *In re Application of Crown CoCo, Inc.*, 458 N.W.2d 132, 137 (Minn. App. 1990) (recognizing that "the agency's action is authorized by the statute itself" when an agency's interpretation is consistent with the plain language of a statute). *See, e.g., Minn. Chamber of Comm.*, 469 N.W.2d at 105 (ruling that MPCA requirement for site-specific water quality criteria was not a rule). Further, formal rulemaking is required only when an agency action is intended to have the force and effect of law. *Wacha v. Kandiyohi Cnty. Welfare Bd.*, 308 Minn. 418, 421, 242 N.W.2d 837, 839 (1976).

If an agency's action constitutes rulemaking, adoption of the rule must be in accordance with the procedures provided for in MAPA. Minn. Stat. § 14.05, subd. 1 (2012). "[T]he failure to comply with necessary procedures results in invalidity of the rule." *White Bear Lake Care Ctr., Inc. v. Minn. Dep't of Pub. Welfare*, 319 N.W.2d 7, 9 (Minn. 1982); *see* Minn. Stat. § 14.45 (2012) (stating that this court must declare a rule invalid if it was adopted "without compliance with statutory rulemaking procedures"). This court applies de novo review to the question of whether an agency "has exceeded its statutory authority." *In re Application of Minn. Power*, 838 N.W.2d 747, 753 (Minn. 2013).

8

We agree with the ALJ's conclusion that MPCA's strategy constituted rulemaking. MPCA's strategy, as evidenced by the 2012 report, includes a statement of general applicability and future effect. The strategy applies to all resource recovery facilities that accept MMSW and includes enforcement methods regarding the requirements of Minn. Stat. § 473.848, particularly with reference to landfill abatement policies and conservation goals that apply to resource recovery facilities. The June 26, 2013 letter to Waste Management states that the purpose of the strategy is to "revers[e] the trend toward land disposal through use of [MPCA's] permitting process." Regarding the strategy's future effect, the June 26, 2013 letter notifies recipients that MPCA intends to "begin the process of obtaining compliance with the restriction on disposal requirements in Minn. Stat. § 473.848" through the use of permitting, as outlined in the 2011 plan, and restrictions on disposal of metropolitan MMSW. Under these circumstances, the ALJ properly determined that MPCA's action of including a new strategy in its 2012 report and its June 26, 2013 letter to interested persons meets the definition of rulemaking.

### *MAPA rulemaking requirements do not apply*

We must next decide whether the rule is subject to the statutory exception for agency action that is in accordance with the plain language of a statute, in this case Minn. Stat. § 473.848. We agree with the ALJ determination that it does. Section 473.848 prohibits a person from disposing of unprocessed MMSW unless "the waste has been certified as unprocessible by a county under subdivision 2" or, if the waste has been transferred to a disposal facility from a resource recovery facility, no other area resource

9

recovery facility can process the waste and "the waste has been certified as unprocessible by the operator of the resource recovery facility." *Id*. at subd 1. Subdivisions 2 and 3 set forth the certification procedures for counties and resource recovery facilities.

MPCA's strategy is consistent with Minn. Stat. § 473.848, subd. 1. As the ALJ reasoned: (1) the planned amendments to the permits, which the MPCA agreed would be subject to MAPA permitting requirements, merely reiterate the restrictions on disposal from subdivision 1 and emanate from the plain language of the statute; (2) the strategy defines "unprocessible" with reference to the Revised Policy Plan, and under Minn. Stat. § 473.149, subd. 3(b) (2012), requirements of the Revised Policy Plan are exempt from rulemaking requirements; (3) MPCA's plan to amend permits of resource recovery facilities to require them to certify waste as unprocessible if they meet the criteria of the Revised Policy Plan is consistent with the statute because the statute mandates that facilities are to "certify as unprocessible" MMSW that it does not process and authorizes the MPCA to adopt standards for making this determination; and (4) MPCA's plan to amend permits of landfills and resource recovery centers to require monthly reporting is consistent with the existing rule, Minn. R. 7001.0150, which obligates the MPCA to require permittees to "submit within a reasonable time the information and reports that are relevant to the control of pollution regarding the construction, modification, or operation of the facility covered by the permit or regarding the conduct of the activity covered by the permit." As summarized by the ALJ, "the provisions of the MPCA's 'strategy' are expressly authorized by Minn. Stat. § 473.848, Minn. R. 70001.0150, or set

10

forth in the Revised Policy Plan, which is exempt from rulemaking. Thus, MPCA's 'strategy' is authorized by existing law."

Waste Management challenges each of these grounds for the ALJ's decision. Waste Management argues that requiring certification of unprocessed MMSW under Minn. Stat. § 473.848, subds. 2, 3, is "entirely inconsistent" with Minn. Stat. § 473.848, subd. 1(a). Waste Management relies on differences in the statutory language as to the timing of the statutory certifications. Subdivision 1(a) states that unprocessed MMSW may not be disposed of at a waste disposal facility "unless" the waste "has been" properly "certified," and waste management argues that use of the word "unless" "allowed for subsequent ratification of the disposal of []unprocessed[] MMSW by the expressly-contemplated after-the fact" certifications under subdivisions two and three. Waste Management suggests that there are differences in the traditional meanings of "unless" and "until," that the legislature's use of "until" in the statute instead of "unless" does not fix the required action temporally, and that the statute therefore "fails to provide the agency any direct enforcement authority for an alleged violation of the restriction on []unprocessed[] MMSW disposal."

We are unpersuaded by Waste Management's interpretation of the statutory language. The different subdivisions apply to different actions required of counties, waste disposal facilities, and resource recovery facilities. Subdivision 1 includes a restriction on MMSW disposal that must be met before a *person* may dispose of waste; subdivision 2 requires *counties* to report annually on the quantity of MMSW that was not processed before its transfer to a disposal facility; and subdivision 3 requires *resource*

11

*recovery facilities* to certify as unprocessible the MMSW that they do not process and the reasons the waste was unprocessible. This statutory language, including its temporal requirements, is clear and consistent with the overall regulatory purpose of the statute.[4] *See State v. Jones*, ___ N.W.2d ___ (Minn. July 2, 2014) (stating that "[t]he goal of statutory interpretation is to effectuate the intent of the Legislature" and "[w]hen the Legislature's intent is discernible from plain and unambiguous language, statutory construction is neither necessary nor permitted"). Further, as MPCA points out, in any event, Waste Management assumes that MPCA permits will require "certification in advance of disposal." Any such assumption is premature because permit implementation has not been decided at this time.

Waste Management also challenges the ALJ's reliance on Minn. R. 7001.0150, subp. 3 which articulates certain conditions that must be included in permits. Among the rule conditions, "[u]nless specifically exempted by statute or rule," "each draft and final permit must include" a requirement that "[t]he permittee shall, when requested by the commissioner, submit within a reasonable time the information and reports that are relevant to the control of pollution regarding the construction, modification, or operation of the facility covered by the permit or regarding the conduct of the activity covered by

---

[4] As a separate argument, Waste Management also argues that the language of section 473.848, subd. 3 is the only provision of the statute that provides for certification, and that other subdivisions of the statute envision a "per se" certification process. For this reason, Waste Management asserts, "there is no room for MPCA to redefine what is considered 'unprocessible' MMSW in connection with a metropolitan county 'certification' . . . as the legislature has fully occupied the field." Again, Waste Management's reading of the statute is strained; a plain reading of the statute does not require the limitations urged by Waste Management.

12

the permit." The ALJ ruled that the "requirement for monthly reporting is fully consistent with this rule and does not add any additional requirements beyond that specified in the rule." Waste Management concedes that the MPCA has the authority to impose a reporting requirement, but "challenge[s] MPCA's new pre-disposal 'certification' requirement" and labels the "attendant" reporting requirement as "simply fruit of the poisonous tree." We reject this argument because it is premised on the belief that MPCA will require pre-disposal certificates.

Waste Management next argues that MPCA "improperly attempted to utilize § 473.139 to circumvent the formal rulemaking requirements applicable to § 473.848, subd. 4." Minn. Stat. § 473.149, subd. 1 (2012) mandates the creation of a comprehensive plan for solid waste, including revision of the metropolitan long range policy plan, which is to include "criteria and standards for solid waste facilities and solid waste facility sites respecting . . . general location; capacity; operation; processing techniques; environmental impact; effect on existing, planned, or proposed collection services and waste facilities; and economic viability." This statute was the foundation of the 2011 Revised Policy Plan. Section 473.848 places restrictions on waste disposal through regulation by certification. Waste Management asserts that "nothing in § 473.149 or § 473.848 provides for cross-fertilization of the two statutes to permit MPCA to utilize its Policy Plan as the device to adopt []standards" for application of section 473.848. But to the degree that the statutes seek the same policy objectives, address many overlapping aspects of waste disposal, and require certification or permits

13

to achieve these objectives, the Revised Policy Plan is pertinent to section 473.848 as well as to section 473.149.[5]

Finally, Waste Management argues that MPCA's interpretation of section 473.848 will result in antitrust violations interfering with the free market, specifically, by resulting in "flow control" of waste from public to private landfills and facilities, and will result in violations of statutory rights to designate where waste will be managed. Waste Management also implies that the certification requirement of MPCA's strategy is unconstitutional because compliance is "impossible." These arguments were not raised before the ALJ or considered by the ALJ in reaching its decision, nor are they adequately briefed. As such, we decline to consider them for the first time on appeal. *See State, Dep't of Labor & Indus. v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997) (declining to address a question without adequate briefing); *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that generally an appellate court will not consider matters not argued and considered below);.

**Affirmed**.

---

[5] Waste Management also argues that MPCA's authority to make a rule under section 473.848, subd. 4, lapsed by operation of Minn. Stat. § 14.125 (2012). We reject this argument because this statute does not apply in the factual context presented here.