# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-0116

Builders Association of the Twin Cities,
Petitioner,

vs.

Minnesota Department of Labor and Industry,
Respondent.

**Filed October 13, 2015**
**Declaratory judgment issued**
**Connolly, Judge**

OAH 8-1900-30855; Revisor R-4144

Rob A. Stefonowicz, Bryan J. Huntington, Larkin Hoffman Daly & Lindgren Ltd., Minneapolis, Minnesota (for petitioner)

Lori Swanson, Attorney General, Scott Grosskreutz, Eric J. Beecher, Assistant Attorneys General, St. Paul, Minnesota (for respondent)

Brendan D. Cummins, Jonathan F. Reiner, Cummins & Cummins, LLP, Minneapolis, Minnesota (for amicus curiae Minnesota Pipe Trades Association)

James A. Yarosh, Mark Thieroff, Siegel Brill, P.A., Minneapolis, Minnesota (for amicus curiae Franklin P. Kottschade and National Association of Home Builders)

Dean B. Thomson, Kristine Kroenke, Fabyanske, Westra, Hart & Thomson, PA, Minneapolis, Minnesota (for amicus curiae The Minnesota Association of Realtors)

Joseph G. Springer, Haley L. Waller Pitts, Fredrikson & Byron, P.A., Minneapolis, Minnesota (for amicus curiae Builders Association of Minnesota)

Considered and decided by Connolly, Presiding Judge; Rodenberg, Judge; and Reyes, Judge.

When the Minnesota Department of Labor and Industry promulgates a rule that is not supported by substantial evidence in the record, such a rule is not based on the application of scientific principles, approved tests, and professional judgment as required by Minn. Stat. § 326B.106, subd. 1 (2014).

**O P I N I O N**

**CONNOLLY**, Judge

In this pre-enforcement declaratory-judgment action brought under Minn. Stat. §§ 14.44, .45 (2014), petitioner Builders Association of the Twin Cities asks us to declare two rules promulgated by respondent Minnesota Department of Labor and Industry invalid. We declare the Energy Code valid and the Sprinkler Rule invalid.

**FACTS**

The Minnesota State Building Code (Building Code) "governs the construction, reconstruction, alteration, repair, and use of buildings." Minn. Stat. § 326B.101 (2014). Respondent may, under the established rulemaking procedures, adopt, amend, suspend, and repeal rules relating to respondent's responsibilities under chapter 326B, which includes establishing the Building Code. Minn. Stat. §§ 326B.02, subd. 5, .106, subd. 1 (2014). The Building Code "must be based on the application of scientific principles, approved tests, and professional judgment." Minn. Stat. § 326B.106, subd. 1. The Building Code incorporates various national model codes by reference, and is periodically updated to include current editions of model codes in general use. Minn. R. 1300.0080 (2013). The Minnesota Residential Code (MRC), Minn. R. ch. 1309 (2013),

and Minnesota Residential Energy Code (MREC), Minn. R. ch. 1322, are part of the Building Code. Minn. R. 1300.0050 (2013). Petitioner's challenge concerns recent amendments to the MRC and MREC.

On November 5, 2012, respondent published a request for comments regarding possible amendments to the MRC. The MRC is based on the International Residential Code (IRC), a national model code, and had most recently been amended in 2007 to adopt the 2006 IRC with amendments. In November 2012, respondent requested comments regarding the possible adoption of the 2012 IRC with amendments. Unlike the 2006 IRC, the 2012 IRC contained a requirement that automatic fire sprinkler systems be installed in all newly constructed one- and two-family dwellings.[1] Prior to publishing the request for comments respondent convened a formal advisory committee to advise respondent on the 2012 IRC and potential amendments. The advisory committee voted in favor of a proposal to remove the sprinkler mandate.

In October 2013, respondent released a Statement of Need and Reasonableness (SONAR) outlining the proposed changes to the MRC. Respondent proposed adopting the 2012 IRC with amendments. This included an amendment to the sprinkler requirement. Rather than require sprinkler systems in all newly constructed one- and two-family dwellings, the proposed rule required sprinkler systems in all newly constructed townhouses and one- and two-family dwellings, with an exception for one-family dwellings with a floor area under 4,500 square feet (Sprinkler Rule).

---

[1] The parties use the terms "dwellings" and "homes" interchangeably. We will use the term "dwellings" throughout this opinion because the challenged rule uses that term.

3

On December 12, 2013, an administrative-law judge (ALJ) held a public hearing on the proposed rule. At the public hearing, and through public comments, members of the building industry challenged respondent's authority to promulgate the Sprinkler Rule. On February 7, 2014, the ALJ issued a report that determined that respondent had the authority to promulgate the Sprinkler Rule and approved the proposed rule. On July 28, 2014, respondent published notice of adoption of the amendments to the MRC, including the Sprinkler Rule, in the State Register. 39 Minn. Reg. 91, 91-92 (July 28, 2014) (to be codified at Minn. R. 1309.0313 (2015)). The Sprinkler Rule became effective on January 24, 2015.

On November 5, 2012, respondent also published a request for comments regarding possible amendment to the MREC. Respondent sought to amend the MREC by adopting and incorporating by reference the 2012 International Energy Conservation Code (IECC) with amendments (Energy Code). Respondent published a SONAR and Dual Notice that invited comments and requests for a public hearing. The hearing was ultimately cancelled because respondent received fewer than 25 requests for a hearing. Respondent submitted the proposed rule and rulemaking record to the ALJ. On June 11, 2014, the ALJ approved the Energy Code. On August 18, 2014, respondent published notice of adoption of the Energy Code in the State Register. 39 Minn. Reg. 232, 232-33 (Aug. 18, 2014) (to be codified at Minn. R. 1322.0010-0500 (2015)). On February 14, 2015, the Energy Code became effective.

4

Petitioner now brings this pre-enforcement declaratory-judgment action under Minn. Stat. §§ 14.44, .45 and asks us to declare the Sprinkler Rule[2] and Energy Code invalid.

## ISSUES

I.      Is the Energy Code invalid?

II.     Is the Sprinkler Rule invalid?

## ANALYSIS

This is a pre-enforcement action brought under Minn. Stat. § 14.44, which permits an interested party to challenge the validity of an agency rule "when it appears that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair the legal rights or privileges of the petitioner." In such an action, we shall declare a rule invalid if it violates the constitution, is in excess of statutory authority of the adopting agency, or was adopted without compliance with rulemaking procedures. Minn. Stat. § 14.45. In a pre-enforcement action, we are limited to considering those three bases for a challenge. *Save Mille Lacs Sportsfishing, Inc. v. Minn. Dep't of Nat. Res.*, 859 N.W.2d 845, 850 (Minn. App. 2015).

### I.

Petitioner argues that the Energy Code is invalid because it was promulgated in excess of respondent's statutory authority. Unlike the Sprinkler Rule, which was only one part of the amendments to the MRC, petitioner appears to challenge the adoption of

---

[2] Petitioner does not challenge the section of the rule that requires sprinkler systems in townhouses.

5

the entire Energy Code. Petitioner argues that "the Energy Code implements various new requirements that are unnecessary, provide no appreciable benefit, and go beyond recognized standards of energy efficiency." However, petitioner does not specify to which new requirements it objects. As a result, we are left with a general challenge to respondent's authority to promulgate the Energy Code.

Petitioner does not articulate substantive reasons why the Energy Code is invalid. Rather, petitioner contends that "[t]here is a dearth of evidence" that the Energy Code complies with the statutory limitations on respondent's rulemaking authority, and therefore respondent "has failed to meet its burden of proof that the Energy Code is within its statutory rulemaking authority." This argument is unpersuasive. Respondent has the statutory authority to "establish a code of standards for the construction, reconstruction, alteration, and repair of buildings, governing matters . . . including design and construction standards regarding heat loss control, illumination, and climate control." Minn. Stat. § 326B.106, subd. 1. This is the stated purpose of the MREC. Minn. R. 1322.0015, subp. 2. Respondent also has the authority to adopt model codes with necessary amendments by reference. Minn. Stat. § 326B.106, subd. 1.

Petitioner also argues that the SONAR for the Energy Code does not comply with Minn. Stat. § 14.131 (2014). Petitioner specifically argues that respondent failed to consider alternatives that would satisfy respondent's energy-conservation objectives. Petitioner argues that the 2015 IECC is one such alternative. This argument is unavailing. The 2015 IECC is not part of the record, and in a pre-enforcement action our review is expressly limited to the record made by the agency during the rulemaking

6

process. *Manufactured Housing Inst. v. Pettersen*, 347 N.W.2d 238, 241 (Minn. 1984). Moreover, respondent began the rulemaking process for the Energy Code in November 2012, at which time the 2015 IECC did not exist. Thus, even if we were to take judicial notice of the 2015 IECC, as petitioner argues we should, respondent's failure to consider it would not render the SONAR for the Energy Code invalid.

In conclusion, the Energy Code was not promulgated in excess of respondent's statutory authority. Therefore, we determine that the Energy Code is valid.

## II.

Petitioner also argues that the Sprinkler Rule must be declared invalid because the rule violates substantive due process, was adopted in excess of respondent's statutory authority, and was adopted without compliance with rulemaking procedures. Thus, petitioner makes arguments based on all three bases that this court may consider during a pre-enforcement action. *Save Mille Lacs Sportsfishing, Inc.*, 859 N.W.2d at 850. We shall address each argument in turn.

### Substantive Due Process

Petitioner argues that the Sprinkler Rule must be declared invalid because it violates substantive due process. Specifically, petitioner argues that the Sprinkler Rule's exception for one-family dwellings under 4,500 square feet is arbitrary. We apply the arbitrary-and-capricious test when considering whether an administrative rule violates substantive due process. *Pettersen*, 347 N.W.2d at 244. Under this standard, appellate courts "make a searching and careful inquiry of the record to ensure that the agency action has a rational basis." *Id.* (quotation omitted). A rule is invalid when it is "not

7

rationally related to the objective sought to be achieved." *Jacka v. Coca-Cola Bottling Co.*, 580 N.W.2d 27, 35 (Minn. 1998). We defer to the agency's expertise, but the agency must explain what evidence it relied on and how that evidence is rationally related to the rule involved. *Minn. Chamber of Commerce v. Minn. Pollution Control Agency*, 469 N.W.2d 100, 103 (Minn. App. 1991), *review denied* (Minn. July 24, 1991).

Respondent argues that the exception for one-family dwellings under 4,500 square feet was the result of balancing the life-safety benefits of sprinkler systems with the installation costs. Respondent may weigh conflicting evidence and make policy judgments, but the record must demonstrate that there has been a reasoned determination. *Pettersen*, 347 N.W.2d at 246. Further, the Building Code, including the MRC, "must be based on the application of scientific principles, approved tests, and professional judgment." Minn. Stat. § 326B.106, subd. 1. The October 2013 SONAR for the Sprinkler Rule indicates that the 4,500-square-foot threshold was chosen in response to an argument made by the fire service that "homes between 4,000 and 5,000 square feet and larger provide the greatest initial life-safety risk to the public." The record does not support this assertion. At the public hearing on December 12, 2013, Angie Wiese, a representative of the Fire Marshals Association of Minnesota, urged the adoption of a sprinkler requirement for all newly constructed dwellings. She testified that "Home size is not the issue. Men, women and children cause fires, not the age of a home. No new home should be built today without fire sprinklers." She also testified that the 4,500-square-foot exception weakened the model IRC provision and rendered it "a substandard code."

Respondent also cites other aspects of the fire service's proposal to support the 4,500-square-foot threshold. Again, we do not find support for this contention in the record. It is true that in response to cost concerns, the fire service submitted a proposal to the advisory committee that recommended replacing the IRC's mandate that all one- and two-family dwellings have sprinkler systems with a phase-in approach. The approach cited in the SONAR would require sprinkler systems in all newly constructed one- and two-family dwellings over 5,000 square feet upon the adoption of the rule. On or after January 1, 2014, new one- and two- family dwellings over 4,000 square feet would be required to have sprinklers. Thereafter, the proposal suggested that the threshold would be lowered by 1,000 square feet every January 1 until January 1, 2017, when all newly constructed one- and two-family dwellings would be required to have sprinklers. But simply because the fire service supported a phase-in approach to sprinkler systems does not mean it supported an exception for all new dwellings under 4,500-square feet. It did not. Moreover, respondent did not adopt a phase-in approach. Rather, it adopted a rule that specifically exempted sprinklers in one-family dwellings under 4,500 square feet.

After making a careful and searching inquiry of the record, we conclude that the 4,500-square-foot threshold for one-family dwellings is arbitrary and not supported by substantial evidence in the record. Based upon precedent from our supreme court, there must be a "reasoned determination" as to why particular standards were chosen in an administrative rule. *Pettersen*, 347 N.W.2d at 246. Because the record does not include evidence of any reasoned determination to indefinitely exempt new one-family dwellings under 4,500 square feet, the Sprinkler Rule must be declared invalid.

9

In *Pettersen*, a challenge was raised to a rule promulgated by the Minnesota Department of Health, which set the maximum indoor air level of formaldehyde in newly constructed housing units. *Id.* at 239. The supreme court reversed in part the decision of the district court upholding the rule, because the "the rationality of the rule appear[ed] to be lacking." *Id.* at 243. The commissioner in *Pettersen* initially proposed a rule setting the maximum level of formaldehyde at 0.4 parts per million (ppm). *Id.* The hearing examiner rejected the proposed maximum level and replaced it with 0.8 ppm, after which the chief hearing examiner recommended the maximum level be set at 0.5 ppm. *Id.* The commissioner ultimately set the maximum level at 0.5 ppm. *Id.* The supreme court determined the level was arbitrary, and stated "we find that there is no explanation of how the conflicts and ambiguities in the evidence are resolved, no explanation of any assumptions made or suppositions underlying such assumptions, and no articulation of the policy judgments." *Id.* at 246. The court determined that "[i]n short, there has been no *reasoned* determination of why a level of 0.5 ppm was selected." *Id.* Similarly, the record here reflects no reasoned determination of how respondent arrived at the indefinite 4,500-square-foot exception.

While we can appreciate respondent's concern with balancing the life-safety benefits of sprinkler systems with increased installation costs, the record simply does not contain a reasoned explanation as to how respondent determined that an indefinite exception for all one-family dwellings under 4,500 square feet strikes that balance. Although the phase-in proposal started at 5,000 square feet, the ultimate goal of the proposal was to require sprinkler systems in new dwellings of *all* sizes, not just larger

10

dwellings. Testimony at the public hearing from representatives of the Fire Chiefs Association also called for sprinkler systems in *all* dwellings. A proposal aimed at requiring sprinkler systems in *all* dwellings does not provide support for respondent's subsequent-implicit determination the life-safety benefits of sprinkler systems justify the increased costs only in new dwellings exceeding 4,500 square feet.

At oral argument, we specifically asked respondent's counsel where in the record there exists any explanation for the 4,500-square-foot threshold. Respondent's counsel answered that the 4,500-square-foot threshold finds support in the testimony of Chief Deputy State Fire Marshal Robert Dahm. Fire Marshal Dahm testified as a representative of the Minnesota Department of Public Safety State Fire Marshal Division, and stated that:

> The State Fire Marshal Division supports the model [IRC] Fire Code language requiring the sprinklering of *all* homes.
>
> That said, the State Fire Marshal recognizes that the Department of Labor and Industry's Construction Codes and Licensing Division proposed rule takes into account economic and other conditions as required by their statutory obligation. As such, the State Fire Marshal Division supports the rule as published.

(Emphasis added.)

Thus, respondent is only partially correct, because the testimony does not explain how the 4,500-square-foot threshold was arrived at by respondent. Like the phase-in proposal and testimony from representatives of the Fire Chiefs Association and Fire Marshals' Association of Minnesota, Fire Marshal Dahm testified that his organization supported requiring sprinkler systems in all dwellings. The acknowledgment that

11

respondent had to take other factors into account does not provide an explanation as to precisely how those factors were taken into account. Nor does it provide support for the implicit determination that a one-family dwelling over 4,500 square feet is the tipping point at which the life-safety benefits of sprinkler systems outweigh the costs. Why is it not 4,000 square feet or 3,000 or 5,000? Respondent has not provided us with an answer to that question.

Moreover, we are at a loss to understand why the exception was not applied to two-family dwellings as well as one-family dwellings. According to the SONAR, in arriving at its decision, "[respondent] determined that larger homes have the same challenges for occupants and first responders as other two-family and townhouse structures, but that the relative cost of installing sprinkler systems in smaller homes may be too expensive." But, as amici Franklin P. Kottschade and National Association of Home Builders point out, the relative cost of installing sprinklers is just as onerous in two-family dwellings, if not more so.

First, the building-cost data relied on by respondent indicates that the average cost of constructing one-family and two-family dwellings is the same: $95.73 per square foot. This means if the "relative cost of installing sprinkler systems in smaller [one-family dwellings] may be too expensive," the same would be true of two-family dwellings, since the cost of construction is comparable. In fact, on a relative basis, sprinkler systems would be more expensive in smaller two-family dwellings than in larger two-family dwellings. Yet, respondent has imposed the sprinkler mandate on every two-family dwelling, regardless of size.

Second, while the average per-foot cost of constructing one-family and two-family dwellings may be the same, the cost of installing sprinkler systems in two-family dwellings may be higher when each unit requires its own, separate sprinkler system. This will often be the case in owner-occupied, two-family dwellings, such as condominiums. In those circumstances, installation costs are actually more expensive in a two-family dwelling than in a similarly sized one-family dwelling, on a per-square-foot basis.

Finally, we emphasize that we are not saying that respondent is not permitted to balance the life-safety benefits of sprinkler systems with the costs, but rather we are saying that this record does not contain a reasoned explanation as to how the department determined that an indefinite exception for new one-family dwellings under 4,500 square feet provided that appropriate balance. Provisions of the Building Code must be based on the application of scientific principles, approved tests, and professional judgment, Minn. Stat. § 326B.106, subd. 1, and there is simply no evidence or explanation to support the determination that new two-family dwellings and new one-family dwellings over 4,500 square feet present a fire-safety risk that justifies the increased costs of sprinkler installations, while new one-family dwellings under 4,500 square feet do not.

Accordingly, we hold that the Sprinkler Rule violates substantive due process because it is arbitrary and not the result of a reasoned determination.

### Statutory Authority

Petitioner also argues that respondent exceeded its statutory authority by adopting the Sprinkler Rule. Whether an agency had the statutory authority to adopt a rule is a legal question that is reviewed de novo. *GH Holdings, LLC. v. Minn. Dep't of*

13

*Commerce*, 840 N.W.2d 838, 841 (Minn. App. 2013). Petitioner argues that respondent exceeded its statutory authority for four reasons: the rule does not conform to model building codes generally accepted and in use, the rule does not tend to lower construction costs, the rule goes above and beyond the recognized standards of health and safety, and the 4,500- square-foot threshold is not the product of objective research, testing, and professional judgment. As we have already concluded that the 4,500-square-foot threshold is arbitrary, we will now focus on the first three arguments.

Respondent is permitted to adopt model codes with necessary modifications by reference. Minn. Stat. § 326B.106, subd. 1. However, the Building Code as a whole "must conform insofar as practicable to model building codes generally accepted and in use throughout the United States." *Id.* Petitioner argues that respondent has exceeded its statutory authority because the overwhelming majority of states have rejected the Sprinkler Rule, and therefore the rule is not generally accepted and in use. Petitioner argues that respondent has a "statutory obligation" to assure that a proposed rule change is based on a model provision being used throughout the United States. We are not convinced that respondent has a statutory obligation to adopt the majority rule being used throughout the United States. Because the statute states that respondent should conform to model codes "insofar as practicable," it is not a strict requirement. Petitioner's argument that the statute requires that the construction be permitted "at the least possible cost consistent with recognized standards of health and safety" is similarly based on permissive language. Minn. Stat. § 326B.101. As noted by the ALJ, Minn. Stat. § 326B.101 directs that construction "should be permitted," and the word "should"

14

is permissive, not mandatory. *In re Jacobs*, 802 N.W.2d 748, 754 (Minn. 2011). However, we do note that only two other states, California and Maryland, have adopted a residential sprinkler requirement. Cal. Code. Regs. tit. 24, § 2.5 (2013), Md. Code. Regs. 05.02.07.04 (2015). Moreover, both California and Maryland adopted the IRC sprinkler mandate without any exceptions based on size, making Minnesota's proposed rule the outlier of the outliers.

Petitioner also argues that respondent exceeded its statutory authority because the Sprinkler Rule does not in part tend to lower construction costs. Respondent argues that the statute does not require the rules to lower construction costs, but rather observes that the adoption of a uniform code will tend to lower construction costs. The ALJ noted that evidence submitted during the rulemaking process indicated that the establishment of new standards tends to lower the costs associated with the standards. Caselaw also supports this conclusion. *See City of Morris v. Sax Investments, Inc.*, 749 N.W.2d 1, 7 (Minn. 2008) (noting that the legislature enacted a uniform code because "a single, uniform set of building standards was necessary to lower costs and make housing more affordable"); *Builders Ass'n of Minn. v. City of St. Paul*, 819 N.W.2d 172, 181 (Minn. App. 2012) (noting that prior to the adoption of the statewide code, the fragmented nature of municipal building codes resulted in confusion and increased costs). The adoption of the Building Code was aimed at lowering overall costs associated with construction standards; it does not require that each individual section of the Building Code tend in part to lower construction costs.

**Rulemaking Procedures**

Finally, petitioner argues that the Sprinkler Rule must be declared invalid because respondent did not comply with statutory rulemaking procedures. For the most part, we disagree with this argument, except for the part dealing with Minn. Stat. § 14.127 (2014). "Rules must be adopted in accordance with specific notice and comment procedures established by statute, and the failure to comply with necessary procedures results in invalidity of the rule." *White Bear Lake Care Ctr., Inc. v. Minn. Dep't of Pub. Welfare*, 319 N.W.2d 7, 9 (Minn. 1982) (citation omitted). The agency must provide notice that includes a description of the subject matter, the groups and individuals likely to be affected, and give notice of and hold a public hearing. *Coalition of Greater Minn. Cities v. Minn. Pollution Control Agency*, 765 N.W.2d 159, 168 (Minn. App. 2009), *review denied* (Minn. Aug. 11, 2009). The purpose of the hearing is to ensure that the agency "does not deprive the public of fair notice of the agency's intentions." *Id.*

Petitioner argues that respondent did not comply with rulemaking procedures because the SONAR was insufficient. When an agency proposes a rule it is required to prepare a SONAR that addresses eight statutory considerations. Minn. Stat. § 14.131. The SONAR must provide responses to the statutory considerations "to the extent the agency, through reasonable effort, can ascertain" the information. *Id.* Respondent submitted a SONAR that addressed the eight considerations, but petitioner argues the responses were deficient. Specifically, petitioner contends that respondent failed to consider alternatives to the Sprinkler Rule, relied on inapposite data when assessing the

probable costs of complying with the rule, and failed to analyze the cumulative effect of the Sprinkler Rule with other fire-safety regulations.

Respondent argues that petitioner is conflating the Sprinkler Rule with the proposed rule as a whole. The proposed rule was meant to update the MRC by adopting the 2012 IRC with amendments; the Sprinkler Rule was just one provision of the proposed rule. Thus, when respondent prepared the SONAR and addressed alternatives to the proposed rule, it addressed alternatives to adopting the 2012 IRC with amendments, not alternatives to specific provisions of the proposed rule. Petitioner does not provide any authority to suggest that respondent was required to consider alternatives to every provision of the proposed rule.

Moreover, a SONAR "need not contain evidence and argument in rebuttal of evidence and argument presented by the public." Minn. R. 1400.2070 (2013). Petitioner argues that the SONAR is insufficient because respondent disregarded "highly-persuasive evidence" concerning the costs of complying with the Sprinkler Rule that was presented during the rulemaking process without providing a sufficient explanation. However, respondent was not required to provide an explanation. *Id.* The SONAR clearly indicates what evidence respondent relied on when assessing the probable costs of complying with the rule, and the evidence is part of the record. Therefore, the fact that the SONAR does not include or address rebuttal evidence does not render it invalid.

Finally, petitioner argues that respondent failed to adequately consider the impact the proposed rule would have on small businesses and cities. When an agency proposes a rule, it is statutorily required to determine if the costs of complying with a proposed rule

17

in the first year after the rule takes effect will exceed $25,000 for a small business or small city. Minn. Stat. § 14.127 (2014). Respondent determined that the cost would not exceed $25,000 because "the proposed rules do not require any construction to occur within the first year after the rules take effect." The ALJ determined that respondent's position was unreasonable and that allowing such an analysis "would render the assessments performed under the statute a nullity." However, the ALJ further determined that the record did not provide a basis to conclude that the cost of complying with the proposed rule would exceed $25,000 for any small business or city, and therefore concluded that respondent satisfied the statutory requirement.

We are troubled by this analysis. Respondent was required to determine if the costs of complying with the rule would exceed $25,000 for any small business or city, and did not perform a satisfactory assessment. The statute clearly requires that the agency, not the ALJ, must make the determination. *Id.* Respondent did not make such an analysis. Therefore, we conclude that, because respondent failed to do this, it did indeed violate rulemaking procedures.

We are mindful today that we are declaring a rule adopted by an administrative agency of the state invalid. We do not do so lightly, but rather thoughtfully and unanimously. Nevertheless, we are bound to apply the law.

## DECISION

For the reasons outlined above, we declare the Energy Code to be valid. However, the Sprinkler Rule's exception for new one-family dwellings under 4,500 square feet is arbitrary and not supported by the record. Therefore, we conclude that petitioner has

18

demonstrated that it was not the result of the application of scientific principles, approved tests, and professional judgment. Further, we conclude that respondent violated statutory rulemaking procedures by failing to adequately address the costs of complying with the Sprinkler Rule for small businesses and cities. Consequently, we declare the Sprinkler Rule invalid.

**Declaratory judgment issued.**