*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0335**

Water in Motion, Inc., et al.,
Petitioners,

vs.

Minnesota Department of Labor and Industry,
Respondent,

Minnesota Plumbing Board,
Respondent.

**Filed December 5, 2016
Rules declared valid
Larkin, Judge**

Minnesota Department of Labor and Industry
OAH File No. 60-1904-32225

David M. Aafedt, Michael E. Obermueller, Christina Rieck Loukas, Winthrop & Weinstine, P.A., Minneapolis, Minnesota; and

Douglas P. Seaton, Seaton, Peters & Revnew, P.A., Minneapolis, Minnesota (for petitioners)

Lori Swanson, Attorney General, Christopher M. Kaisershot, Sarah L. Krans, Assistant Attorneys General, St. Paul, Minnesota (for respondent)

Kathleen M. Brennan, McGrann, Shea, Carnival, Straughn & Lamb, Chartered, Minneapolis, Minnesota (for Amici Curiae Minnesota Building Owners & Managers Coalition, et al.)

Considered and decided by Smith, Tracy M., Presiding Judge; Larkin, Judge; and Rodenberg, Judge.

## UNPUBLISHED OPINION

**LARKIN**, Judge

In this preenforcement administrative rules challenge pursuant to Minn. Stat. § 14.44 (2014), petitioners challenge respondent Minnesota Plumbing Board's adoption of a new uniform plumbing code. We declare the rules valid.

## FACTS

The Minnesota Plumbing Board is the state entity with authority to adopt a state plumbing code and amendments to that code. *See* Minn. Stat. § 326B.435, subd. 2(3) (2014). The board is composed of 14 members: 12 appointed by the governor with the advice and consent of the senate; the commissioner of labor and industry or a designee; and the commissioner of health or a designee. *Id.*, subd. 1(a) (2014). By statute, 11 of the 12 appointed members are required to hold various specified licenses or professions relevant to the plumbing code. *Id.* The remaining appointed member must be a public member. *Id.* Since its inception in 2007, the board has been chaired by John Parizek.

In 2010, the board received a request to replace Minnesota's existing, "homegrown" plumbing code with the International Plumbing Code (IPC), a product of the International Code Council (ICC), and another request to replace the existing plumbing code with the Uniform Plumbing Code (UPC), a product of the International Association of Plumbing and Mechanical Officials (IAPMO). The IPC is part of a family of "I-codes"; Minnesota has adopted a number of the I-codes, including the International Residential Code. The

IPC is considered in the industry to be more "performance based," meaning that requirements in the code are stated in terms of what must be accomplished, rather than the precise manner in which it must be done. The UPC, in contrast, is considered to be a more "prescriptive" code.

The board formed a National Code Review Committee (the committee) to study the possibility of adopting a model plumbing code and make a recommendation to the board. The committee met twice in early 2011, and discussed model-code adoption in terms of code administration, health and safety, costs and training, and accessibility. The committee's meeting minutes reflect its consideration that the IPC is the more performance-based code, but the committee deemed the two codes fairly equal in terms of health and safety. The committee discussed costs of adopting a model code generally, which it concluded would be hard to quantify. The committee noted that Minnesota's licensing reciprocity agreements with North Dakota and South Dakota could be jeopardized if Minnesota adopted the IPC because those states have adopted the UPC. At the end of its March 31, 2011 meeting, the committee voted to recommend to the full plumbing board that one of the model codes be adopted.

At the board's April 19, 2011 meeting, the committee made its recommendation and the board heard presentations from representatives of the ICC and IAPMO about their respective model codes. The board also allowed public comments from individuals advocating for adoption of the IPC or UPC. Following the presentations and public-comment period, the board discussed commissioning side-by-side comparisons of the model codes and the existing plumbing code. Motions were made to require such analysis

of both of the model codes, but none of these motions prevailed. Instead, the board unanimously passed a motion to move forward with adopting either the IPC or UPC with "appropriate amendments at a future rulemaking" and a motion to "adopt[] the UPC and direct the [committee] to report back to the Board any necessary amendments." Although it was not mentioned in the latter motion, according to board chair Parizek, "the Board was well aware that adoption of a national code can only be accomplished through proper rulemaking, and the intent was to move forward down this path."

On November 13, 2012, the board initiated the statutory rulemaking process by publishing a request for comments on possible amendments to the state plumbing code in the State Register, specifying the "possible incorporation of the 2012 [UPC] by reference, with amendments." The board completed a Statement of Need and Reasonableness (SONAR), stating the board's intent to adopt the UPC with amendments and noted that the UPC was chosen over the IPC because "the UPC most closely resembles the existing Minnesota Plumbing Code, and the UPC is adopted in three of the four states adjacent to Minnesota, two of which have reciprocity agreements with Minnesota, providing consistency" and that "adopting the UPC presents an easier transition from the existing code than the IPC would." The board published a dual notice to adopt rules without a hearing or to hold a hearing if 25 or more requests for hearing were received. More than 25 requests for a hearing were received, and an administrative-law judge (ALJ) conducted a hearing. The ALJ heard testimony from Parizek and public comments from 15 interested individuals.

4

Parizek testified that, by virtue of their background and experience, the members of the plumbing board (with the exception of the public member) were familiar with the existing Minnesota Plumbing Code as well as the UPC and IPC. Parizek testified that adoption of a model code was necessary because the board had been overwhelmed by requests for product approval, proposals for new and amended code language, and inquiries regarding licensing requirements and code interpretation. Model codes, which are regularly updated by an outside organization, will allow the board to operate more efficiently. Parizek testified regarding reasons for adopting the UPC rather than the IPC, including that:

- The UPC is certified by the American National Standards Institute (ANSI), an impartial organization acting as a third party to oversee the code development process through consensus standards.

- The UPC is effective and relevant, and will be adequate to protect the health and safety of Minnesota citizens through minimum prescribed standards and is still specific enough to ensure uniform installations and enforcement throughout the state.

- The UPC has been adopted in North and South Dakota, which have licensing reciprocity agreements with Minnesota.

- Minnesota's version of the UPC will be freely accessible on the Internet and through a publication to be offered for purchase by IAPMO.

Following the hearing, the ALJ held the record open for the submission of written comments and rebuttal. The board submitted a letter response to the written comments received and the hearing testimony. In that letter, the board reasserted its three reasons for selecting the UPC over the IPC: (1) the UPC most closely resembled the existing plumbing code; (2) the UPC has been adopted in three adjacent states, two of which Minnesota has

5

licensing reciprocity agreements with; and (3) the UPC would provide a smoother transition. The board submitted a letter from the North Dakota State Plumbing Board noting that there were very few differences between the UPC and the existing Minnesota Plumbing Code and that the UPC "is a very prescriptive code that is also very enforceable and user friendly."

The board also responded to a number of objections that had been raised—both in proceedings before the board and at the administrative hearing—to adoption of the UPC. The overriding concern of commentators was that complying with the UPC, as the more prescriptive code, would be more expensive than complying with the IPC. The board expressly disagreed with this assertion, noting that even commentators opposing the adoption of the UPC conceded that the two codes are very similar in their technical requirements. The board refuted specific examples of more costly compliance offered by commentators, noting that most examples were based on a comparison of the IPC to the UPC without the amendments proposed by the board, and that the cost information presented was not substantiated, represented opinion, and was therefore unreliable. As to the performance-versus-prescriptive debate, the board expressed its judgment that the more prescriptive nature of the UPC promotes public safety, particularly in the context of inspections performed by persons who are not plumbers. The board concluded that the "UPC, as amended, is performance-based to the extent practicable."

Commentators also asserted that adopting the UPC would conflict with other portions of the Minnesota State Building Code, which is mostly comprised of I-codes. In this respect, the board noted that the current Minnesota Plumbing Code was not an I-code

but had worked hand-in-hand with the I-codes, that proposed amendments to the UPC would "tailor it for consistency with Minnesota statutes and rules," and that other states have "successfully adopted many ICC building codes but adopt the UPC in lieu of the IPC."

The ALJ issued a report concluding that the board had complied with rulemaking requirements and demonstrated the need for and reasonableness of the proposed rules. The ALJ recommended adoption of the rules. The board voted to adopt the rules, and they were published in the State Register on July 27, 2015. The new rules took effect January 23, 2016. One month later, petitioners filed this declaratory-judgment action.

### D E C I S I O N

This court exercises original jurisdiction, under the Minnesota Administrative Procedure Act (MAPA), over preenforcement challenges to the validity of administrative rules. Minn. Stat. § 14.44; *Coal. of Greater Minn. Cities v. Minn. Pollution Control Agency*, 765 N.W.2d 159, 163 (Minn. App. 2009), *review denied* (Minn. Aug. 11, 2009). A preenforcement challenge "questions the process by which the rule was made and the rule's general validity before it is enforced against any particular party." *Coal. of Greater Minn. Cities*, 765 N.W.2d at 164 (quoting *Mfg. Hous. Inst. v. Pettersen*, 347 N.W.2d 238, 240 (Minn. 1984)). "The standard of review is more restricted than in an appeal from a contested enforcement proceeding in which the validity of the rule as applied to a particular party is adjudicated." *Id.* (citing *Pettersen*, 347 N.W.2d at 240-41).

7

**I.** **The scope of this action is limited to challenges to the rules formally promulgated.**

Petitioners argue at length that the board adopted a rule at its April 19, 2011 meeting that must be invalidated for failure to comply with statutory rulemaking requirements. In an April 20, 2016 order denying petitioners' motion to modify the record, this court stated that such assertions are beyond our scope of review in this preenforcement administrative rules challenge. We apply that determination here.

"Only formally promulgated rules may be challenged in a pre-enforcement action under Minn. Stat. § 14.44." *Minn. Ass'n of Homes for the Aging v. Dep't of Human Servs.*, 385 N.W.2d 65, 69 (Minn. App. 1986), *review denied* (Minn. June 13, 1986). The proper procedure to challenge the alleged enforcement of an unpromulgated rule is to file a petition with the Office of Administrative Hearings (OAH) for decision by an ALJ that can then be appealed to this court. *See* Minn. Stat. § 14.381, .44 (2014).

It is undisputed that the board did not formally promulgate the rules adopting the UPC until July 2015. Indeed, Parizek testified to the board's awareness that a new plumbing code could not be adopted without rulemaking proceedings. Moreover, petitioners' predominant argument against the April 19, 2011 "rule" is that it was not formally promulgated. Under these circumstances, there is no basis for review by this court under Minn. Stat. § 14.44. *See L.K. v. Gregg*, 380 N.W.2d 145, 149 (Minn. App. 1986) (noting that this court "cannot review what does not exist"), *review denied* (Minn. Mar. 14, 1986).

Petitioners argue that the plain language of Minn. Stat. § 14.44 allows a challenge to a "rule" without regard to whether it has been formally promulgated. But we decline to depart from our plainly worded previous holdings limiting our review to formally promulgated rules.[1] Petitioners also urge that this court should address its challenges to the April 19, 2011 "rule" because there is a sufficient record to do so. *See Minn. Ass'n of Homes for the Aging*, 385 N.W.2d at 69 (noting that a rule that has not been formally promulgated lacks a record and this court cannot review it). But this court has not held that it can review a "rule" that has not been formally promulgated under Minn. Stat. § 14.44 if there is a record, and our previous holdings regarding review under that statute are not contingent on the existence or absence of a record.

Even if we were to follow petitioners' preferred interpretation of Minn. Stat. § 14.44, we would not conclude that the board adopted a rule at its April 19, 2011 meeting. A "rule" is "every agency statement of general applicability and future effect, including amendments, suspensions, and repeals of rules, adopted to implement or make specific the law enforced or administered by that agency or to govern its organization or procedure." Minn. Stat. § 14.02, subd. 4 (2014). Petitioners urge that the board adopted a rule when it voted to "adopt" the UPC at its April 19, 2011 meeting. Notwithstanding the board's poor choice of words, the board knew that it lacked authority to adopt the UPC at that meeting.

---

[1] Notably, following this court's decisions limiting direct § 14.44 actions to rules formally promulgated, the legislature amended MAPA to add § 14.381, which provides a remedy for parties asserting that an agency is enforcing rules without formal promulgation. *See* 2001 Minn. Laws ch. 179 § 8, at 673-74. Thus, even were we to reach petitioners' interpretation argument, we would conclude that the legislature endorsed our limitation of direct review under Minn. Stat. § 14.44 to promulgated rules by passing § 14.381.

*See* Minn. Stat. § 326B.13, subd. 1 (2014) (providing that adoption of state building code is subject to MAPA). And there is no suggestion, much less evidence, that the board intended to apply or did apply the UPC before its formal promulgation and January 2016 effective date. Accordingly, the board's April 19, 2011 vote to "adopt" the UPC was not an "agency statement of general applicability and future effect." *See* Minn. Stat. § 14.02, subd. 4.[2]

## II. The rules formally promulgated on July 27, 2015, are valid.

"In proceedings under section 14.44, the court shall declare the rule invalid if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was adopted without compliance with statutory rulemaking procedures." Minn. Stat. § 14.45 (2014). Petitioners assert that the rules were adopted without compliance with statutory rulemaking procedures because the board failed to include adequate information in the SONAR and that the rules otherwise lack a rational basis.

### A. The SONAR is not prejudicially defective.

"Agency rulemaking is strictly controlled by statute and the statutory procedures must be followed in order to create a valid rule." *Minn. Envtl. Sci. & Econ. Review Bd. v. Minn. Pollution Control Agency*, 870 N.W.2d 97, 101 (Minn. App. 2015). One of the statutory requirements is that an agency prepares a statement of need and reasonableness

---

[2] To the extent petitioners argue that the board's vote to pursue adoption of the UPC was a statement of future effect, we reject that argument, which would lead to the absurd and circular result that any decision to pursue rulemaking would itself be subject to rulemaking. As the ALJ noted in his report, the board's decision to pursue adoption of the UPC "represented the Board's choice of regulatory approach," and did not create a rule.

10

(SONAR).  *See* Minn. Stat. § 14.131 (2014).  To the extent that "the agency, through reasonable effort" can ascertain the information, the SONAR must include the following:

> (1) a description of the classes of persons who probably will be affected by the proposed rule, including classes that will bear the costs of the proposed rule and classes that will benefit from the proposed rule;
> (2) the probable costs to the agency and to any other agency of the implementation and enforcement of the proposed rule and any anticipated effect on state revenues;
> (3) a determination of whether there are less costly methods or less intrusive methods for achieving the purpose of the proposed rule;
> (4) a description of any alternative methods for achieving the purpose of the proposed rule that were seriously considered by the agency and the reasons why they were rejected in favor of the proposed rule;
> (5) the probable costs of complying with the proposed rule, including the portion of the total costs that will be borne by identifiable categories of affected parties, such as separate classes of governmental units, businesses, or individuals;
> (6) the probable costs or consequences of not adopting the proposed rule, including those costs or consequences borne by identifiable categories of affected parties, such as separate classes of government units, businesses, or individuals;
> (7) an assessment of any differences between the proposed rule and existing federal regulations and a specific analysis of the need for and reasonableness of each difference; and
> (8) an assessment of the cumulative effect of the rule with other federal and state regulations related to the specific purpose of the rule.

*Id.*

An agency is separately required to determine, before the close of the hearing record, "if the cost of complying with a proposed rule in the first year after the rule takes effect will exceed $25,000" for a business with fewer than 50 full-time employees or a statutory or home rule charter city with fewer than ten full-time employees.  Minn. Stat. § 14.127, subds. 1-2 (2014).

11

The board indisputably prepared a SONAR addressing each of the considerations in Minn. Stat. § 14.131 and made the determination that the cost of compliance for small businesses and municipalities would not exceed $25,000. Petitioners assert that the board failed to provide adequate information and analysis of SONAR considerations (3)-(5) and the small business and municipality cost determination. Thus, petitioners assert, the rules must be invalidated.

A SONAR "must be sufficiently specific so that interested persons will be able to fully prepare any testimony or evidence in favor of or in opposition to the proposed rules." Minn. R. 1400.2070, subp. 1 (2015). Deficiencies in the information provided in a SONAR do not require rule invalidation absent prejudice. *See Minn. League of Credit Unions v. Minn. Dep't of Commerce*, 486 N.W.2d 399, 405-06 (Minn. 1992).

We agree that the board's analysis in the SONAR is conclusory and that the better practice would be to include more thorough analysis. However, we cannot conclude that petitioners were prejudiced by the conclusory nature of the SONAR. There is no argument that petitioners were surprised or prejudiced by the board's testimony at the hearing or that they were unable to fully prepare their own testimony and arguments for the hearing. We therefore reject petitioners' argument that the rules should be declared invalid based on deficiencies in the SONAR.

Petitioners assert that strict compliance with rulemaking procedures is required or rules must be invalidated, citing Minn. Stat. § 14.45, which provides that this court "shall" declare a rule invalid if it was adopted without compliance with statutory rulemaking procedures. *See also White Bear Lake Care Ctr., Inc. v. Minn. Dep't of Pub. Welfare*, 319

N.W.2d 7, 9 (Minn. 1982) (holding that "[r]ules must be adopted in accordance with specific notice and comment procedures established by statute," and that "the failure to comply with necessary procedures results in invalidity of the rule"). But the cases in which our supreme court has invalidated rules for failure to comply with rulemaking procedures involved circumstances in which agencies wholly failed to promulgate rules. *See White Bear Lake*, 319 N.W.2d at 7-9 (discussing department of public welfare "rule which ha[d] not been promulgated in accordance with the Administrative Procedure Act"); *Johnson Bros. Wholesale Liquor Co. v. Novak*, 295 N.W.2d 238, 242 (Minn. 1980) (discussing liquor control commissioner's failure to formally adopt rule and complete lack of compliance with statutory rulemaking procedures). And the supreme court made clear in *Minn. League of Credit Unions* that deficiencies in the SONAR do not require invalidation absent prejudice. 486 N.W.2d at 405-06.

Petitioners also urge that the rules must be invalidated under this court's decision in *Builders Ass'n of the Twin Cities v. Minn. Dep't of Labor & Indus.*, 872 N.W.2d 263 (Minn. App. 2015), *review denied* (Minn. Dec. 29, 2015). In that case, we declared invalid, on substantive-due-process grounds, a rule adopted by the Minnesota Department of Labor and Industry that arbitrarily required sprinklers in new one- and two-family dwellings over 4,500 square feet and did not require sprinklers in new one-family dwellings under 4,500 square feet. *Builders Ass'n*, 872 N.W.2d at 266, 271. After invalidating the rule on due-process grounds, we separately determined that the department violated rulemaking procedures by failing to satisfactorily assess whether the cost of the rule would exceed $25,000 for any small business or city in the first year of enforcement. *Id.* at 274. *Builders*

13

*Ass'n* is distinguishable, however, because it does not appear that the parties in that case raised the issue of prejudice, which has been squarely raised by respondents here.

**B.       The rules do not violate substantive due process.**

Under a substantive-due-process theory, administrative rules are invalid only if they bear no rational relationship to the accomplishment of a legitimate public purpose. *Pettersen*, 347 N.W.2d at 243.  Minnesota courts apply an "arbitrary and capricious" test, making a "searching and careful inquiry of the record to ensure that the agency action has a rational basis." *Id.* at 244 (quotations omitted).  "In attacking a statute or regulation on due process grounds, one bears a heavy burden; the statute or rule need only bear some rational relation to the accomplishment of a legitimate public purpose to be sustainable." *Id.* at 243.  "When applying the arbitrary and capricious test, deference is to be shown agency expertise, but the agency must explain on what evidence it is relying and how that evidence connects rationally to the rule involved." *Minn. Chamber of Commerce v. Minn. Pollution Control Agency*, 469 N.W.2d 100, 103 (Minn. App. 1991) (quotation omitted), *review denied* (Minn. July 24, 1991).

Respondents assert that petitioners did not make a substantive-due-process challenge to the formally promulgated rules in their principal brief and thus have waived the right to make that challenge.  We agree that petitioners failed to expressly articulate such a challenge.  Petitioners' principal brief does, however, dispute the rational basis for the rules and argue that their adoption was arbitrary and capricious.  We address these arguments within the applicable substantive-due-process framework.

The stated purpose of the statutes governing plumbing is "to promote the public health and safety through properly designed, acceptably installed, and adequately maintained plumbing systems." Minn. Stat. § 326B.41 (2014). Toward that end, the statutes authorize the board to "adopt the Plumbing Code that must be followed in this state and any Plumbing Code amendments thereto." Minn. Stat. § 326B.435, subd. 2(3). The board determined, in its collective professional judgment, that the UPC, as amended, was best suited to meet the purposes of the plumbing statutes. We will not lightly interfere with that judgment. *See Minn. Chamber of Commerce*, 469 N.W.2d at 103 (stating that this court defers to agency expertise).

The board's justification for selecting the UPC over the IPC is threefold: (1) resemblance to the then-existing Minnesota Plumbing Code; (2) the UPC's adoption in adjacent states, two of which have licensing reciprocity agreements with Minnesota; and (3) the smoother transition that could be made by adopting the UPC. These are rational bases for preferring the UPC and are supported by evidence in the record, particularly Parizek's testimony and the letter from the North Dakota State Plumbing Board.

Petitioners suggest that the rules lack a rational basis because the board did not sufficiently identify and articulate the costs associated with adopting the UPC. The board in the SONAR recognized two types of potential costs associated with adoption of the UPC-based rules. First, the board noted that the probable costs of implementation and enforcement would be minimal because the new rules would replace an existing plumbing code, for which there were already ongoing costs of training and compliance. Second, the board acknowledged that there may be increased costs associated with complying with

15

particular provisions of the new UPC-based rules versus the existing plumbing code, and lower costs associated with complying with other provisions. The board in its judgment, however, anticipated the overall plumbing-related costs to be "neutral."

The board's analysis of the cost of the new rules lacks the level of detail that we might prefer. We are cognizant, however, of the difficulty in quantifying the costs of adopting an entire model code, as opposed to particular provisions of a code. *Cf. Builders Ass'n*, 872 N.W.2d at 268-71 (addressing adoption of single sprinkler rule). We can envision endless permutations in cost comparison, depending on the particular work that a particular business or homeowner desires on a particular property. We are not persuaded that the board was required to undertake such a complex and hypothetical analysis. Minn. Stat. § 14.131 (requiring certain information to be included in SONAR "to the extent the agency, *through reasonable effort*, can ascertain [the] information" (emphasis added)). Instead we conclude that, faced with potential costs that were difficult to quantify, the board reasonably relied on other factors to select between the UPC and IPC.[3]

Lastly, petitioners assert that the rules must be invalidated because the board failed to provide analysis in support of its determination under Minn. Stat. § 14.127 (2014). Once again, although we would prefer more detailed analysis from the board, we cannot conclude

---

[3] As we note above, the board did specifically respond to alleged cost discrepancies raised by commentators during the rulemaking proceedings. Before this court, petitioners rely heavily on the board's failure to identify costs associated with a particular provision of the new rules requiring annual testing for certain backflow devices. At oral argument, however, it was disclosed that this cost would be incurred regardless of which model code was adopted. And the parties agree that the board acted reasonably in determining to adopt a model code.

16

that invalidation of the rules is required. Minn. Stat. § 14.127, subd. 1, requires an agency to make a determination whether the cost of complying with the rule in its first year of effectiveness will exceed $25,000 for certain small businesses and municipalities. The agency must make this determination before the close of the record before the ALJ and the ALJ must review and approve or disapprove the determination. *See* Minn. Stat. § 14.127, subd. 2.

The statute does not provide for this court's substantive evaluation of determinations under Minn. Stat. § 14.127, and, as we note above, our review is limited to determining whether an agency has violated constitutional provisions, exceeded its authority, or failed to comply with rulemaking requirements. Because the board made the required determination under Minn. Stat. § 14.127 and the ALJ reviewed and approved the determination, we cannot conclude that there was a failure to comply with statutory rulemaking requirements. Nor can we conclude that the board violated constitutional provisions or exceeded its statutory authority in making the § 14.127 determination. The board is authorized to adopt a state plumbing code through rulemaking and has articulated a rational basis for adopting the UPC. Accordingly, there is no basis for us to invalidate the rules based on the failure to provide a more thorough analysis under Minn. Stat. § 14.127.[4]

---

[4] Notably, even an agency determination that a rule *will* cost a covered small business or municipality more than $25,000 in the first year does not preclude promulgation of the rules. Rather, in the event of an affirmative determination under § 14.127, a covered small business or municipality may file a statement of temporary exemption. If such a statement is filed, "the rules do not apply to *that business* or *that city* until the rules are approved by

17

Petitioners rely on *Builders Ass'n* to argue that invalidation is required, but our holding in that case was based on our determination that the challenged rule was arbitrary and capricious and therefore violated due process. *See Builders Ass'n*, 872 N.W.2d at 271 (holding that rule "violates substantive due process because it is arbitrary and not the result of a reasoned determination"). Although we separately concluded that the agency violated § 14.127, we did not invalidate the rules solely on that ground and see no reason to do so here. *See id.* at 273-74.

**Rules declared valid.**

---

a law enacted after the agency determination or administrative law judge disapproval." *Id.*, subd. 3 (emphasis added).